Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/20/2020 08:08 AM CST

- 928 -

**Nebraska Supreme Court Advance Sheets
306 Nebraska Reports**
VALLEY BOYS v. AMERICAN FAMILY INS. CO.
Cite as 306 Neb. 928

**Valley Boys, Inc., doing business as Valley Boys
Roofing, assignee, appellant and cross-appellee,
v. American Family Insurance Company,
appellee and cross-appellant.**

___ N.W.2d ___

Filed August 28, 2020.    No. S-19-528.

1. **Actions: Parties: Standing.** Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue.
2. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect.
3. **Judgments: Verdicts: Appeal and Error.** Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record.
4. **Judgments: Verdicts.** To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.
5. ____: ____. On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.
6. **Contracts: Appeal and Error.** The construction of a contract is a matter of law, in connection with which an appellate court has an obligation

to reach an independent, correct conclusion irrespective of the determinations made by the court below.

7. **Contracts: Assignments.** An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction.

8. **Assignments: Debtors and Creditors: Standing.** A debtor has standing to challenge an assignment if it can show actual prejudice by the improper assignment, an injury that is directly traceable to the assignment, such as being at risk for paying the same debt twice, or by otherwise showing that the assignment is invalid, ineffective, or void.

9. **Assignments: Parties.** If there has been a valid and complete assignment of rights, then the assignee is the real party in interest.

10. ____: ____. If an assignment is invalid, then the purported assignor remains the real party in interest.

11. **Actions: Parties: Standing: Jurisdiction.** The question of whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional.

12. **Judgments: Jurisdiction: Appeal and Error.** Aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.

13. **Contracts.** A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.

14. ____. The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.

15. ____. Instruments made in reference to and as part of the same transaction are to be considered and construed together.

16. **Contracts: Proof.** A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract.

17. **Contracts.** It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements.

18. ____. Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each party to do, or permit something to be done, in consideration of the act or promise of the other.

19. ____. An agreement which depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise.

20. ____. Where the promisor retains an unlimited right to decide later the nature or extent of his or her performance, the promise is too indefinite for legal enforcement.

21. **Assignments: Consideration.** An assignment is effective only when supported by valid consideration.

22. **Contracts: Consideration.** Without a mutuality of obligation, the agreement lacks consideration and, accordingly, does not constitute an enforceable agreement.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Matthew P. Saathoff, of Saathoff Law Group, P.C., L.L.O., and Larry E. Bache, Jr., and Michael W. Duffy, of Merlin Law Group, P.A., for appellant.

Joel D. Nelson and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Valley Boys, Inc., doing business as Valley Boys Roofing (Valley Boys), appeals the order of the district court for Douglas County which granted in part judgment notwithstanding a jury verdict in favor of American Family Insurance Company (American Family). Valley Boys alleged that American Family failed to pay the full amounts due under postloss assignments of insurance proceeds. The court found that eight of Valley Boys' nine assignments were unenforceable. We agree, and we affirm the order of the district court.

## BACKGROUND

In the summer of 2014, nine homeowners sustained property damage in a hailstorm. The properties were insured under American Family's "Gold Star Special Deluxe" homeowner's insurance policy, which covered direct physical loss caused by hail. Eight of the nine policies included an endorsement entitling the homeowner insureds to proceeds for covered losses determined at actual cash value, or "the amount actually and

necessarily spent" for replacement cost.[1] The ninth policy had an endorsement which covered actual cash value only. In damages estimates for claims under these policies, American Family defined actual cash value as "the cost to repair or replace a damaged item with an item of like kind and quality, less depreciation," and replacement cost as "the cost to repair the damaged item with an item of like kind and quality, without deduction for depreciation."

The homeowners purportedly assigned their proceeds under the insurance policies to Valley Boys, a roofing company, which submitted the claims to American Family. American Family's catastrophe adjusters inspected the properties and prepared initial damages estimates for each property. Based on these estimates, American Family paid the homeowners the actual cash value of their losses, which the homeowners then paid to Valley Boys. Under the insurance policies issued by American Family, the replacement costs would be paid only after the work was completed and final invoices were received. The policies further required the work to be completed within 1 year of the date of the loss.

Valley Boys sought to expand the scope of work originally approved by American Family by submitting requests for acknowledgment of coverage for additional damage (RAAD's). The RAAD's listed descriptions of repair work Valley Boys recommended be done at the properties but did not provide itemized prices or a total price for such work. The cover letter to the RAAD's stated that if Valley Boys did not receive a response within 5 business days, "we will be forced to begin necessary repairs and/or replacement in order to prevent further damage to the insured's premises." American Family did not agree to the RAAD's, and Valley Boys did not complete that work.

With respect to the initial scope of work based on American Family's estimates, Valley Boys submitted invoices of work

---

[1] See *D & S Realty v. Markel Ins. Co.*, 284 Neb. 1, 816 N.W.2d 1 (2012) (discussing actual cash value and replacement cost coverage).

completed at the properties and demanded payment of the withheld depreciation. The invoices list descriptions of completed work and provide a total price without price itemization. American Family issued supplemental payments for some of Valley Boys' requests, but declined to cover other requests, contending that no proceeds were due.

In April 2015, Valley Boys, as assignee, filed suit against American Family for failing to pay the full amount of repair and/or replacement costs due under the policies. Valley Boys requested a judgment for damages in the amount of $83,746.73 and stated its damages would likely increase with further investigation. In its answer, American Family affirmatively alleged that Valley Boys lacked standing to bring the claims that it brought.

In April 2017, American Family moved for summary judgment, contending that Valley Boys is not the real party in interest, because the assignments between the homeowners and Valley Boys were invalid. American Family argued that due to a lack of agreement on key terms, such as scope of work and price, the assignment contracts were unenforceable. American Family further argued that the assignments conflicted with language in the endorsement which limits repair or replacement costs to those which are actually and necessarily spent.

Following a hearing, the court entered a written order denying American Family's motion. In its order, the court first rejected Valley Boys' argument that American Family lacked standing to challenge the assignments pursuant to *Marcuzzo v. Bank of the West*.[2] The court found that American Family had standing to argue the invalidity of the assignments on the theory that the assignment contracts altered American Family's obligations under the insurance policies. The court then examined the contractual language at issue and ultimately determined there were triable issues of fact.

---

[2] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

The record indicates that Valley Boys and the homeowner insureds signed a document titled "Assignment of Insurance Claim." The assignments, which all contain the same language, incorporate a contract by reference. The assignments provide:

> [I]n consideration of performing the work pursuant to the contract executed by [homeowners] and Valley Boys, as well as any change orders executed thereafter, and for other good and valuable consideration, [homeowners] hereby transfer, assign and set over onto Valley Boys, all of the right, title and interest [in] insurance claim(s) . . . covering loss sustained at the property . . . including but not limited to any and all insurance claims asserted thereunder and proceeds thereof.

Eight of the nine homeowner insureds contemporaneously signed a "Customer Service Agreement" (CSA). Under the terms and conditions of the CSA, the "Job Price" section states that Valley Boys will "provide material and labor services to the above described property within the scope of repairs and/or replacement to be submitted to the insurance company." That section also states, "Due to the unique nature of repairs related to insurance claims, this contract may not include an explicit price because the final scope of repairs and/or replacement arising from the Claim has not yet been agreed upon with the insurer," and "Valley Boys agrees to use customary industry pricing for the work, including general contractor markup at customary industry rates." It further states, "Valley Boys' performance under this agreement is contingent upon Valley Boys reaching agreement with the insurance company on the scope of repairs and/or replacement."

The "Scope of Work" provision of the CSA provides that "Valley Boys shall provide Customer with roofing and general contracting services, including labor and materials, *as outlined in Exhibit A* (the "Services"). *Exhibit A sets forth* the Services that Valley Boys shall provide Customer under Customer's insurance claim(s)." (Emphasis supplied.) The provision also states, "Valley Boys will not perform and is not liable to perform any Services except those identified in Exhibit A,

unless otherwise stated herein." Valley Boys reserved the right to not perform the work specified in "Exhibit A" if it determined the work was not "professionally necessary and/or applicable at the time of the work." However, no "Exhibit A" was attached to any CSA herein, and there is no evidence either the homeowners or American Family ever received any documents labeled "Exhibit A."

The court found that because American Family had not fully denied any of the claims, there existed genuine issues of material fact regarding whether the parties, through subsequent conduct, established a definite agreement on scope of work and price.

Lastly, the court considered American Family's argument that the assignments materially changed its obligations under the insurance policies. Under the "Loss Value Determination" conditions of the endorsement found in eight of the policies, a section which concerns replacement costs states:

> Buildings insured at 100% of replacement cost will be settled at replacement cost, subject to the following:
>
> . . . .
> . . . [W]e will pay the cost to repair the damaged portion or replace the damaged building, provided repairs to the damaged portion or replacement of the damaged building are completed, but not exceeding . . . .
>
> . . . .
> . . . the amount actually and necessarily spent for repair of the damaged portion or replacement of the damaged building[.]

American Family argued that the undefined "actually and necessarily spent" language limits the replacement costs it must pay. The court found this argument went to the issue of the agreed-upon scope of work, raising a question of fact for the jury.

American Family then filed an offer to confess judgment in the amount of $20,000, which offer was not accepted. At trial, American Family moved for a directed verdict based on the invalidity of the assignments, which the court overruled.

Following a 4-day trial, the jury returned a verdict in favor of Valley Boys in the amount of $62,841.06.

American Family moved for judgment notwithstanding the verdict (JNOV), arguing that the assignments were indefinite, lacked consideration, and modified the insurer's obligations. The court granted the motion as to the claims based on the eight assignments which incorporated a CSA, and it entered judgment in favor of Valley Boys for $1,586.07 in damages for the remaining claim.

In its posttrial order, the court considered the language of the assignments which states that they were provided "in consideration of performing the work pursuant to the contract executed by [homeowners] and Valley Boys." The court found that each assignment incorporated a CSA by reference and read each assignment and CSA together as a whole. The court returned to the CSA language which states that "Exhibit A" defines the scope of work. The court noted that the owner of Valley Boys acknowledged in his trial testimony that no CSA herein contained an "Exhibit A." He testified that "Exhibit A" refers to RAAD's and invoices, but conceded that these documents are not titled "Exhibit A."

The court found that the record showed no agreement on scope of work or price and that as a result, the assignments were unenforceable due to lack of consideration. The court also found that even if Valley Boys and the homeowners had agreed upon an "Exhibit A" outlining the scope of work, under the CSA, Valley Boys retained the option to unilaterally determine that it would not perform any item in the agreed-upon scope of work. Consequently, the court ruled that each assignment and CSA was illusory and entered JNOV in favor of American Family with respect to eight of the claims.

The court entered judgment in favor of Valley Boys on the ninth claim, because that claim was based on a "StraightForward Pricing" agreement rather than a CSA. The pricing agreement included an agreed-upon scope of work regarding completed shingle replacement work, with itemized pricing and a total price of $2,828. The court found Valley Boys should

recover for the work listed in the pricing agreement. The court subtracted the amount paid by American Family based on its estimate, $1,241.93, and awarded Valley Boys $1,241.93 for the ninth claim. Valley Boys appealed, and American Family cross-appealed. We moved this case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Valley Boys assigns, restated, that the district court erred in (1) finding that American Family had standing to challenge the assignments and (2) concluding that the assignments were invalid.

American Family filed a cross-appeal which argues that if we reverse based on the reasoning of the district court, we should affirm on alternate grounds, because the assignments altered American Family's duties under the insurance policies.

## STANDARD OF REVIEW

[1,2] Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue.[3] When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect.[4]

[3-5] Review of a ruling on a motion for JNOV is de novo on the record.[5] To sustain a motion for JNOV, the court resolves the controversy as a matter of law and may do so only

---

[3] *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018), citing *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[4] *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

[5] *LeRette v. Howard*, 300 Neb. 128, 912 N.W.2d 706 (2018).

when the facts are such that reasonable minds can draw but one conclusion.[6] On a motion for JNOV, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.[7]

[6] The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.[8]

## ANALYSIS

### American Family Had Standing
### to Challenge Assignments

Valley Boys argues that under our holding in *Marcuzzo*,[9] American Family lacks standing to challenge the validity of the assignments, because American Family is not a party to the assignments. In contrast, American Family argues that the terms of the assignments altered its obligations under the insurance policies and that as a result, it has standing to challenge the validity of the assignments.

[7] An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction.[10] Nebraska law states that only a party (actual or alleged) to a contract can challenge its validity.[11]

In *Marcuzzo*, in the context of a mortgage assignment, we held that a borrower who alleges that an assignment is

---

[6] *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 298 Neb. 777, 906 N.W.2d 1 (2018).

[7] *Id.*

[8] *Acklie v. Greater Omaha Packing Co., ante* p. 108, 944 N.W.2d 297 (2020).

[9] *Marcuzzo, supra* note 2.

[10] *Western Ethanol Co., supra* note 4.

[11] *Id.*

voidable, and who is not a party to a mortgage assignment or a third-party beneficiary of the assignment, lacks standing to challenge the assignment.[12] In that case, the borrower asserted that the wrong entity signed the assignment paperwork, an issue which we determined would not affect the validity of the assignment but would merely make the assignment voidable at the election of a party to the assignment.[13]

[8] Recently, however, this court discussed the recognized exception to the rule in *Marcuzzo*.[14] A debtor has standing to challenge an assignment if it can show actual prejudice by the improper assignment, an injury that is directly traceable to the assignment, such as being at risk for paying the same debt twice, or by otherwise showing that the assignment is invalid, ineffective, or void.[15] In *Western Ethanol Co. v. Midwest Renewable Energy*,[16] we held that a debtor had standing to challenge the assignment of a judgment based on the contention that the debtor was at risk of paying the same debt twice. Here, American Family contends that it can show an injury that is directly traceable to the assignment.

Generally, all contract rights may be assigned, unless the assignment would materially change the duty of the obligor or materially increase the obligor's burden or risk under the contract.[17] An assignment does not affect or change any of the provisions of the contract.[18] The assignee of a chose in action acquires no greater rights than those of the assignor, and takes it subject to all the defenses existent at the time.[19] A

---

[12] See *Marcuzzo, supra* note 2.

[13] See *id*.

[14] See *Western Ethanol Co., supra* note 4.

[15] *Id*.

[16] *Id*.

[17] 29 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 74:10 (4th ed. 2003 & Supp. 2020); 3 Restatement (Second) of Contracts § 317(2) (1981).

[18] *Kasel* v. *Union Pacific RR. Co.*, 291 Neb. 226, 865 N.W.2d 734 (2015).

[19] *Western Ethanol Co., supra* note 4.

postloss assignment of insurance proceeds is allowed because it is essentially an assignment of a chose in action against the insurer; but such an assignment neither increases nor changes the insurer's obligations under the policy.[20]

Although not controlling here, subsequent to the events in this case, the Legislature enacted Neb. Rev. Stat. § 44-8605 (Cum. Supp. 2018), which sets forth requirements for postloss assignments of rights under insurance policies.

Under the policies in this case, American Family acknowledges that it had an obligation to pay the replacement costs to repair the hail damage due upon the completion of the work and the receipt of invoices for the work. However, under the assignments, Valley Boys demanded payment for work that either was not agreed to by the parties or was not completed. As a result, the assignments altered American Family's obligations and created the risk that American Family would pay more than what it was obligated to pay, resulting in an injury that is directly traceable to the assignment. Therefore, American Family has standing to challenge the assignments.

The district court correctly found that American Family has standing to argue that the assignments between the homeowners and Valley Boys are invalid.

## Valley Boys Not Real
## Party in Interest

Valley Boys argues the district court erred in determining that eight of the assignments were invalid and that Valley Boys is not the real party in interest with respect to the claims based on those assignments. Valley Boys further argues that the district court erred in not finding that the terms of the assignments, the repair work, and the handling of the insurance claims provide sufficient consideration.

[9,10] Nebraska's real party in interest statute provides that "[e]very action shall be prosecuted in the name of the real

---

[20] See *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 295 Neb. 419, 889 N.W.2d 596 (2016).

party in interest . . . ."[21] The purpose of that section is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.[22] The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of controversy.[23] If there has been a valid and complete assignment of rights, then the assignee is the real party in interest.[24] If an assignment is invalid, then the purported assignor remains the real party in interest.[25]

[11,12] The question of whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional.[26] If a motion challenging a court's subject matter jurisdiction is filed after the pleadings stage, and the court holds an evidentiary hearing and reviews evidence outside the pleadings, it is considered a "factual challenge."[27] The party opposing the motion must then offer affidavits or other relevant evidence to support its burden of establishing subject matter jurisdiction.[28] Where the trial court's decision on subject matter jurisdiction is based on a factual challenge, the court's factual findings are reviewed under the clearly erroneous standard.[29] But aside from any factual findings, the trial court's

---

[21] Neb. Rev. Stat. § 25-301 (Reissue 2016).

[22] *Jacobs Engr. Group, supra* note 3.

[23] *Id*.

[24] See, *Western Ethanol Co., supra* note 4; *Millard Gutter Co., supra* note 20; *Archer v. Musick*, 147 Neb. 1018, 25 N.W.2d 908 (1947); John P. Lenich, Nebraska Civil Procedure § 6:4 (2020).

[25] See, *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994); Lenich, *supra* note 24.

[26] *Jacobs Engr. Group, supra* note 3.

[27] *Id*., citing *Washington v. Conley*, 273 Neb. 908, 734 N.W.2d 306 (2007).

[28] *Id*.

[29] *Western Ethanol Co., supra* note 4.

ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.[30]

Here, American Family challenged Valley Boys' standing in its answer, motion for summary judgment, motion for directed verdict, and motion for JNOV. In considering American Family's motion for JNOV, the court received the entire trial record and determined that Valley Boys lacked standing with respect to eight of the assignments.

Valley Boys contends that the district court erred, because postloss assignments are a well-entrenched principle of Nebraska law and therefore Valley Boys was the real party in interest. In *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*,[31] we held that as a general principle, a clause in an insurance policy restricting assignment does not in any way limit the policyholder's power to make an assignment of the rights under the policy—consisting of the right to receive the proceeds of the policy—after a loss has occurred. However, American Family has not argued that the insurance policies or Nebraska law prohibits the homeowner insureds from assigning their postloss insurance proceeds. Rather, American Family's challenge to the assignments concerns general contract principles. American Family contends, as the district court found, that the assignments are invalid because they are indefinite and lack consideration.

[13-15] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.[32] The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.[33] Instruments

---

[30] *Id.*

[31] *Millard Gutter Co., supra* note 20.

[32] *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018).

[33] *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018).

made in reference to and as part of the same transaction are to be considered and construed together.[34]

[16-19] A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract.[35] It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements.[36] Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each party to do, or permit something to be done, in consideration of the act or promise of the other.[37] An agreement which depends upon the wish, will, or pleasure of one of the parties is illusory and does not constitute an enforceable promise.[38]

In its order disposing of American Family's motion for summary judgment, the district court found that each assignment which incorporated a CSA contained no definite agreement on scope of work or price. Nevertheless, the court overruled the motion to give Valley Boys the opportunity to present evidence at trial that the parties through their subsequent actions came to an enforceable agreement.[39] After reviewing American Family's motion for JNOV with the benefit of all of the evidence admitted at trial, the court found the evidence showed that each assignment and CSA left scope

---

[34] *Id.*

[35] *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

[36] *Davco Realty Co. v. Picnic Foods, Inc.*, 198 Neb. 193, 252 N.W.2d 142 (1977).

[37] *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998).

[38] *Acklie, supra* note 8.

[39] See, *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001), *abrogated in part on other grounds, Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013); *MBH v. John Otte Oil & Propane*, 15 Neb. App. 341, 727 N.W.2d 238 (2007) (unenforceable agreement may then become enforceable when missing term is subsequently supplied by parties).

of work and price to be determined in the future and that no binding agreement had been reached.

A review of the framework of insurance coverage in this case shows that "scope of work" and "price" are vital terms. The primary dispute was the amount of replacement costs due. Actual cash value is the value of the property in its depreciated condition.[40] The purpose of actual cash value coverage is indemnification to make the insured whole, not to benefit the insured because the loss occurred.[41] Unlike standard indemnity, replacement cost coverage places the insured in a better position than he or she was in before the loss. In essence, replacement cost coverage insures against the expected depreciation of the property.[42]

Here, the homeowner policies required work to be completed prior to recovery of replacement costs and within 1 year from the date of loss. If the insured repairs or replaces the property within the time period stated in the policy, the insured will then be entitled to an additional payment for the amount by which the cost of the repair or replacement exceeded the actual cash value payment.[43]

However, under the assignment contracts, scope of work and price were left to be determined in the future, and no agreement ultimately was reached. As set forth in the CSA, Valley Boys' promise to perform was conditioned upon "reaching agreement with the insurance company on the scope of repairs and/or replacement." However, Valley Boys never reached an agreement with American Family regarding the scope of repairs and replacement and therefore could not reach an agreement with the homeowners regarding the scope of work.

As pointed out, the CSA required Valley Boys' scope of work to be set forth in an "Exhibit A" but no "Exhibit A" can be found in our record. Valley Boys asserted that the RAAD's

---

[40] *D & S Realty, supra* note 1.

[41] *Id.*

[42] *Id.*

[43] *Id.*

and invoices constituted the scope of work and resolved the insufficiencies of the assignment contracts. However, the record does not show that the RAAD's and invoices were ever sent to the homeowners. Additionally, there is no proof that Valley Boys agreed to perform the work described in the RAAD's or that the homeowners agreed to pay for any such work. In addition, the RAAD's included no itemized prices for work or materials, and no total price, making the RAAD's vague and unenforceable.

Moreover, even if there were an "Exhibit A," the "Scope of Work" provision granted Valley Boys the unilateral right to decline to perform work specified in "Exhibit A" which it deemed unnecessary. The record indicates that the contract was drafted in a manner to protect Valley Boys from insurance company coverage denials or price disagreements.

[20] Where the promisor retains an unlimited right to decide later the nature or extent of his or her performance, the promise is too indefinite for legal enforcement.[44] As such, the assignments which incorporated a CSA failed to set forth a sufficient scope of work, permitting Valley Boys unlimited discretion as to what work to perform, and are therefore unenforceable as a matter of law.

With respect to price, Valley Boys argues the assignments themselves mutually acknowledged the receipt and sufficiency of good and valuable consideration. Nonetheless, the CSA makes clear that at the time of its execution, it did "not include an explicit price because the final scope of repairs and/or replacement arising from the Claim has not yet been agreed upon with the insurer." The record at trial showed no subsequent agreement as to price ever came to fruition.

[21,22] An assignment is effective only when supported by valid consideration.[45] "'[A] mere pretense of bargain does not suffice, as where there is a false recital of consideration or where the purported consideration is merely nominal. In

---

[44] *Acklie, supra* note 8.

[45] *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993).

such cases there is no consideration . . . .'"[46] Mutual promises may constitute consideration if they are given in exchange for each other and are equally obligatory on the parties so that each may have an action thereon.[47] Mutuality is absent when only one of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only.[48] Without a mutuality of obligation, the agreement lacks consideration and, accordingly, does not constitute an enforceable agreement.[49]

Valley Boys claimed that the issue of price was satisfied by Valley Boys' obligation to use customary industry pricing. Additionally, Valley Boys contends that when it provided estimates in the invoices using "Xactimate," a computer software which estimates the scope of loss, pricing was established.

A supervisor of catastrophe adjusters for American Family testified that Xactimate is one tool that American Family uses to estimate loss, in addition to industry guidelines and an adjuster's experience. She testified that without itemized pricing, she could not interpret Valley Boys' requests in the invoices. Valley Boys' expert witness admitted that if two experienced adjusters looked at the same house and used Xactimate, they would come up with different numbers due to the human input that goes into estimates.

The record before us makes clear that Valley Boys never reached an agreement with American Family regarding the scope of repairs and replacement and that therefore, Valley Boys never reached an agreement with the homeowners as to price. As such, the assignments which incorporated a CSA failed to set forth a sufficient price and are therefore unenforceable as a matter of law.

---

[46] *Irwin v. West Gate Bank*, 288 Neb. 353, 360, 848 N.W.2d 605, 610 (2014), quoting Restatement (Second) of Contracts § 71, comment *b.* (1981).

[47] See *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984).

[48] *Johnson Lakes Dev., supra* note 37.

[49] *Acklie, supra* note 8.

Pursuant to our obligation to reach an independent correct conclusion irrespective of the determinations made by the court below, when the language of each assignment and CSA is construed together as a whole, and considered in the context of the evidence presented at trial, we conclude that there was no definite, mutual agreement between the homeowner insureds and Valley Boys. As a result, no right to collect postloss insurance proceeds passed to Valley Boys under the assignments and Valley Boys is not the real party in interest for those claims.

Because we determine that the assignments are unenforceable under general contract principles, and because American Family's cross-appeal asserts only an alternative basis for affirming and does not challenge the ninth claim, we need not address American Family's cross-appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.