Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/19/2021 09:08 AM CST

Kenneth Marr, appellee, v. West
Corporation, doing business as
West Customer Management
Group, LLC, a Delaware
corporation, appellant.

___ N.W.2d ___

Filed August 27, 2021.    No. S-20-636.

1. **Judgments: Verdicts: Appeal and Error.** Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record.
2. **Judgments: Verdicts.** To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.
3. ____: ____. On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.
4. **Motions for New Trial: Appeal and Error.** A motion for new trial is addressed to the discretion of the trial court, whose discretion will be upheld in the absence of an abuse of that discretion.
5. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.
6. ____: ____: ____. The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.
7. **Testimony: Evidence: Appeal and Error.** Testimony objected to which is substantially similar to evidence admitted without objection results in no prejudicial error.

8. **Evidence.** Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

9. ____. To be relevant, the probative value of evidence need only be something more than nothing.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed.

Kenneth M. Wentz III, Jessica Källström-Schreckengost, and Nicholas B. McGrath, of Jackson Lewis, P.C., for appellant.

Patrick J. Barrett and Rhianna A. Kittrell, of Fraser Stryker, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

A jury found that West Corporation (West) breached contracts with a former employee, Kenneth Marr, when it refused to pay certain compensation to which Marr claimed he was entitled upon his resignation. The jury returned a verdict in favor of Marr of just over $400,000. West thereafter filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The district court denied those motions, and West appeals. We find no reversible error on the part of the district court and therefore affirm.

## I. BACKGROUND

### 1. Marr's Contracts With West

Marr began his career with West in 1991. It was his first job after college. He began working in a call center but earned a number of promotions over the years. In 2009, he was promoted to senior vice president of technical operations.

About the time Marr was promoted, West and Marr entered into an "Alternative Employment Agreement" (Employment Agreement). In the Employment Agreement, Marr agreed,

among other things, that if he left employment at West, he would not solicit business from West's customers for 1 year following his departure. In exchange, West agreed that if Marr voluntarily terminated his employment "for Good Reason," he would be entitled to receive as severance pay an amount equal to 1 year of his base salary, as well as his projected annual bonus.

With respect to "Good Reason," the Employment Agreement provided as follows:

> For purposes of this Agreement, Executive shall have "Good Reason" to terminate this Agreement if one of the following events occurs without the Executive's express written consent:
>
> 1. both (i) a reduction in any material respect in the Executive's position(s), duties or responsibilities with the Company, and (ii) an adverse material change in the Executive's reporting responsibilities, titles or offices with the Company . . . .

The Employment Agreement additionally provided that in order to terminate for good reason, Marr was required to give written notice to West "as to the details of the basis for such Good Reason" within 30 days following the event giving rise to such reason and West "must fail to provide a reasonable cure" within 30 days after receiving such notice.

In September 2015, while Marr was still working as West's senior vice president of technical operations, Marr and West entered into a "Restricted Stock Award Agreement" (Stock Agreement). Under the Stock Agreement, Marr was awarded certain restricted West stock. The Stock Agreement provided that Marr's unvested stock would fully vest and that he would be entitled to dividends related to such stock in the event of a "Qualifying CIC Termination," which would encompass Marr's ending his employment within 2 years after a change in control of West's ownership for a "Good Reason." The Stock Agreement listed a number of events that would give Marr "Good Reason" to resign, including

either (A) a reduction in any material respect in the Grantee's position(s), duties or responsibilities with the Company, as in effect during the 90-day period immediately prior to such Change in Control, or (B) an adverse material change in the Grantee's reporting responsibilities, titles or offices with the Company as in effect immediately prior to such Change in Control.

The Stock Agreement also provided that in order to resign for "Good Reason," Marr was required to provide written notice to West of the occurrence of any of the events which the Stock Agreement stated would give Marr good reason to resign within 90 days of his having "knowledge of the circumstances constituting such event" and that West must have failed to correct the "circumstances resulting" in any of those events within 30 days after receiving such notice.

### 2. Changes at West

In October 2017, West was acquired by a company headquartered in New York. At that time, Marr was responsible for technical operations in certain areas within West. The next month, Marr's role was changed; he was given responsibility for technical strategy for West as a whole.

In February 2018, Marr's role at West changed again. West formed a new "Integration & Divestitures" team, which would be led by Pam Mortenson, an executive vice president. Marr was given the title of senior vice president of integration management and reported to Mortenson. While reporting to Mortenson, Marr worked exclusively on integrations. Marr did not work on divestitures. As their names suggest, in an integration, West would work to incorporate a company it had acquired into its operations, while in a divestiture, West would work to sell a company to another entity.

In the last week of April 2018, Mortenson provided notice that she was leaving West. Upon Mortenson's departure, Marr began reporting to Erik Carlson. Carlson had been hired a few weeks before as a vice president in West's finance

department, and, unlike Marr, Carlson did not live or work in Omaha, Nebraska. Marr had previously reported through West's operations department rather than the finance department.

After Marr began reporting to Carlson, Carlson removed Marr from several integrations on which he was working and assigned him to work on divestitures. Marr asked those working on divestitures how he could help, but he was told there was nothing to be done at that point.

### 3. Marr's Resignation From West

In January 2018, Marr applied for a position as chief technology officer at First National Technology Solutions (FNTS). He completed several interviews for that position with representatives of FNTS in February, March, and April. In May, Marr negotiated with FNTS regarding the chief technology officer position, and on May 18, FNTS offered him the position. He accepted the offer on May 20.

On May 21, 2018, Marr sent Carlson an email stating that changes that had taken place in the past few weeks "within our Integration Management Organization structure and operating model have resulted in a material reduction in my position's duties and responsibilities as well as a significant reduction in my reporting responsibilities." Marr stated that he was notifying West that he was terminating his employment for good reason under the Employment Agreement if no reasonable cure could be reached.

Marr resigned his position at West effective June 21, 2018. He began working for FNTS the next week.

### 4. Lawsuit

A few months after his resignation from West, Marr filed a lawsuit against West. He alleged that he notified West on May 21, 2018, that he intended to voluntarily terminate his employment for good reason under the Employment Agreement and the Stock Agreement if a reasonable cure could not be reached; that West had failed to provide a reasonable cure; and that

he voluntarily terminated his employment on June 21, 2018. Marr claimed that because he had resigned for good reason under the Employment Agreement and the Stock Agreement, Marr was contractually entitled to compensation, which West had refused to pay.

The case proceeded to a 3-day trial before a jury. At trial, Marr, an in-house counsel at West, Carlson, and Mortenson testified. Testimony that is relevant to the issues raised on appeal is discussed in the analysis section below.

During the trial, the district court made several evidentiary rulings that are at issue in this appeal. The district court sustained Marr's objections on relevancy and hearsay grounds to certain exhibits showing Marr's communications with FNTS regarding his job application. The district court also overruled West's objections when Carlson was asked on cross-examination where certain West executives lived and worked and how old he was.

### 5. Jury Verdict and Posttrial Motions

At the conclusion of the trial, the jury entered a verdict in favor of Marr, finding West liable to Marr for damages in the amount of $400,540.45.

After the verdict, West filed a motion for judgment notwithstanding the verdict and a motion for new trial. The district court denied both motions, and West appealed.

## II. ASSIGNMENTS OF ERROR

West assigns on appeal that the district court erred (1) by overruling West's motion for judgment notwithstanding the verdict and (2) by overruling West's motion for a new trial. West argues it was entitled to a new trial based on the evidentiary rulings noted above. West also separately assigns error to each of these evidentiary rulings.

## III. STANDARD OF REVIEW

[1-3] Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record. *Valley Boys*

*v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020). To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Id.* On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Id.*

[4] A motion for new trial is addressed to the discretion of the trial court, whose discretion will be upheld in the absence of an abuse of that discretion. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012).

## IV. ANALYSIS

### 1. Judgment Notwithstanding Verdict

West's primary assignment of error is that the district court erred by denying its motion for judgment notwithstanding the verdict. It contends that its motion should have been granted for several reasons. First, West argues that Marr failed to prove that he was eligible to resign for good reason under either the Employment Agreement or the Stock Agreement. Second, West contends that Marr's actual motivation for resigning was unrelated to any good reason, as defined by the agreements. Finally, West claims that Marr failed to give sufficient notice to West under both the Employment Agreement and the Stock Agreement. In the sections below, we address each of West's arguments.

### (a) Good Reason Resignation Under Employment Agreement

As noted above, the Employment Agreement provided that Marr could resign for good reason if the following occurred: "(i) a reduction in any material respect in [Marr's]

position(s), duties or responsibilities with [West], and (ii) an adverse material change in [Marr's] reporting responsibilities, titles or offices with [West]." West contends that the jury could not have reasonably concluded that Marr's duties and responsibilities were materially reduced or that his reporting obligations were adversely changed.

In support of its argument that Marr's duties and responsibilities were never materially reduced and that his reporting obligations were not adversely changed, West largely highlights testimony from Carlson and Mortenson. It points to testimony from Mortenson that she understood when the "Integration & Divestitures" team was formed that members of the team, presumably including Marr, would be involved in divestitures as well as integrations. It points to testimony from Carlson as to the importance of the work on divestitures. He testified that working on divestitures was similar to working on integrations and that both required strategic thinking. He also testified that the economic value of the divestitures Marr worked on exceeded the value of the integrations he worked on. With respect to Marr's reporting obligations, West directs us to testimony from Carlson that he did not believe that Marr's opportunities would be reduced by reporting through the finance department rather than the operations department.

The evidence West points to was undoubtedly supportive of its position that Marr's duties and responsibilities had not been materially reduced and that his reporting obligations had not been materially altered. However, a party is not entitled to judgment notwithstanding the verdict merely because there was some evidence that supported its position. Instead, a court can grant a motion for judgment notwithstanding the verdict when the evidence would only allow a reasonable jury to find in favor of the moving party. See *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020). That is not the case here. While there was some evidence that supported West's position, other evidence supported Marr's.

After Marr began reporting to Carlson, Marr was removed from several integration projects on which he had been working and assigned to work on divestitures. Marr testified at trial that working on integrations required him to understand the products, services, sales, marketing, employees, and technology of the acquired companies and develop strategies to integrate their operations into West's. He testified that he had not previously worked on divestitures; that working on divestitures did not require him to make the same type of strategic decisions he had to make while working on integrations; and that after he was assigned to work on divestitures, individuals who were responsible for divestitures told him there was no work for him to do. Marr testified that he did not want to be assigned to divestitures, because it did not allow him to use the experience he had developed to help West succeed. Although there was evidence to support West's contrary position, based on Marr's testimony, the jury could have reasonably found that Marr's duties and responsibilities were materially reduced after he was removed from several integrations and assigned to work on divestitures.

We believe a reasonable jury also could have concluded that Marr's reporting obligations were adversely and materially changed after Mortenson departed and he began reporting to Carlson. Mortenson was an executive vice president at West; Carlson was a vice president. Marr testified that as a vice president, Carlson was actually lower in West's corporate structure than Marr was as a senior vice president. Marr also testified that once he began reporting to Carlson, he no longer reported through West's operations department as he had during his career, but reported through West's finance department despite his lack of a finance degree and never having worked in the finance department. Finally, Marr also testified that the people to whom he reported in the finance department did not work in Omaha and that he believed this would have an adverse effect on his ability to advance in a new department. Based on this evidence, the jury could have reasonably concluded that

Marr's reporting obligations were adversely changed when he began reporting to Carlson.

### (b) Good Reason Resignation Under Stock Agreement

West also argues that the jury could not reasonably have concluded that Marr could resign for good reason under the Stock Agreement. Under the Stock Agreement, Marr could resign for good reason if there was a change in control of the organization and either a material reduction of his position, duties, or responsibilities in effect during the 90 days prior to the change in control or an adverse material change in Marr's reporting responsibilities, titles, or offices that were in effect immediately prior to the change in control.

The jury could have reasonably found that Marr was eligible to resign for good reason under the Stock Agreement. West does not dispute that a change in control took place in October 2017 when a New York company purchased West. In addition, we believe the jury could have reasonably found when Marr started reporting to Carlson, there was an adverse material change in Marr's reporting responsibilities from what they were immediately prior to the change in control. There was evidence admitted at trial that before the change in control, Marr was not reporting through the finance department, not reporting to individuals outside of Omaha, and not reporting to a person lower in West's corporate structure, as he was after he began reporting to Carlson. And because the Stock Agreement provided that Marr could resign for good reason based upon a material reduction in his duties *or* an adverse material change to his reporting responsibilities, it is not necessary for us to consider whether the jury could also have found that there was a material reduction in Marr's duties after the change in control.

### (c) Marr's Actual Reason for Resignation

Next, West argues that the district court should have granted its motion for judgment notwithstanding the verdict, because

the jury could only have reasonably concluded that Marr did not actually resign for a good reason. Here, West contends that the evidence shows that Marr's motivation for resigning from West was not a reduction in his duties or an adverse change in his reporting responsibilities, but, rather, his decision to pursue and accept employment with FNTS. West claims that if Marr's stated reasons were pretextual, he did not resign for good reason under the agreements. Marr argues otherwise, contending that the agreements gave him the right to receive the compensation at issue if he resigned after the occurrence of the events identified in the agreements and that his subjective reasons for resigning are irrelevant.

It is not clear to us that Marr's right to resign for good reason under either the Employment Agreement or the Stock Agreement depended on his motivation for resigning. We find, however, that we need not resolve that question. Even if we assume that Marr's subjective motivation was relevant, we find that West was not entitled to judgment notwithstanding the verdict. Marr testified that he did not want to leave West and that even after he sent the email to Carlson on May 21, 2018, he hoped that West could find him a role within the company that allowed him to use the expertise he had developed there. Marr further testified that if West had found such a role for him, he would have stayed.

West points to the evidence of Marr's efforts in pursuing and accepting a job at FNTS and argues that "it is blatantly apparent that [Marr] was not actually asking West to cure the perceived adverse changes to his role identified in his resignation notice" but that his true motivation was "to increase his severance compensation by hundreds of thousands of dollars as he transitioned into his new position with [FNTS]." Brief for appellant at 20. West appears to contend that given his pursuit and acceptance of a job at FNTS, Marr's testimony that he would have stayed at West if it had addressed the issues he raised regarding his duties and reporting obligations is not credible. West cannot, however, challenge the credibility of

Marr's testimony through a motion for judgment notwithstanding the verdict.

In a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed. See *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020). Marr's testimony that he would have stayed at West if it had addressed his concerns was favorable to Marr and thus must be treated as true for purposes of West's motion for judgment notwithstanding the verdict. This testimony, if believed, provided a basis upon which a reasonable jury could have concluded that Marr resigned because of the changes to his duties and responsibilities and reporting obligations at West.

(d) Notice Under Employment Agreement

West next argues that it was entitled to judgment notwithstanding the verdict, because Marr failed to comply with the notice provisions of the Employment Agreement. Again, we are not persuaded.

West argues that Marr's May 21, 2018, email to Carlson was a "bare bones resignation notice that failed to adequately identify the alleged bases of his Good Reason claim." Brief for appellant at 23. We disagree that Marr's email failed to provide adequate notice as a matter of law. Marr's email informed Carlson that he believed his duties and responsibilities and reporting obligations had been adversely changed. The email also provided notice that Marr believed that was the case as a result of changes that had taken place in the last few weeks within the "Integration Management Organization structure and operating model." Marr's email did not provide exhaustive detail as to why he believed the recent changes had reduced his duties and adversely altered his reporting obligations, but the Employment Agreement does not specify that Marr was obligated to provide exhaustive detail.

### (e) Notice Under Stock Agreement

Finally, West argues that it was entitled to judgment notwithstanding the verdict, because Marr provided inadequate notice under the Stock Agreement. West argues that Marr failed to provide any written notice under the Stock Agreement and that even if he did provide such notice, it was not provided within 90 days after he had knowledge of the factual basis for his claim that he could resign for good reason. We find these arguments meritless as well.

We disagree that Marr failed to comply with the notice provision of the Stock Agreement as a matter of law. Although his May 21, 2018, email to Carlson did not expressly mention the Stock Agreement, Marr did inform Carlson in the email that Marr believed the recent changes at West had resulted in a material reduction in his duties and responsibilities, as well as an adverse change in his reporting obligations. Marr thereby provided notice of the occurrence of events which the Stock Agreement listed as grounds for a good reason resignation, which is what the notice provision of the Stock Agreement required.

We also disagree with West's argument that the jury could not have reasonably concluded that Marr provided notice within 90 days after he had knowledge of the basis for his claim that he could resign for good reason under the Stock Agreement. We find that the jury could have reasonably concluded that Marr first had knowledge of the basis for his claim that his reporting obligations had been adversely changed from what they were prior to the change in control when he began reporting to Carlson in April 2018.

### 2. Motion for New Trial

As an alternative to its argument that the district court should have granted its motion for judgment notwithstanding the verdict, West argues that the district court erred by denying its motion for a new trial. West contends that the district court should have granted it a new trial because it made several

erroneous evidentiary rulings that prejudiced West. In the sections below, we consider West's arguments as to each of these evidentiary rulings.

### (a) Exclusion of Some of Marr's Communication With FNTS

West first argues that the district court erred by excluding on relevancy and hearsay grounds various exhibits regarding Marr's application for and eventual acceptance of a position at FNTS. The district court sustained Marr's objections to the admission of a job application Marr submitted to FNTS in January 2018 in which he indicated he would be available to start work on February 12. It also sustained Marr's objections to various emails in which Marr scheduled and discussed job interviews with representatives of FNTS, an email in which a representative of West updated Marr on the status of his application, and emails in which FNTS offered Marr the position and Marr accepted. During a discussion with counsel explaining the basis for excluding exhibits on hearsay grounds, the district court stated that it was its view that "none of these scheduling matters constitutes statements against any interest."

[5,6] We find it unnecessary to determine whether the district court erred by excluding this evidence. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015). The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *Id.* In particular, where the information contained in an exhibit is, for the most part, already in evidence from the testimony of witnesses, the exclusion of the exhibit is not prejudicial. *Id.* As we will explain, under these principles, we do not believe the exclusion of the evidence regarding Marr's pursuit of a job at FNTS, even if erroneous, would amount to reversible error.

Although the district court sustained Marr's objections to certain exhibits showing that Marr pursued and accepted a job at FNTS, other evidence of the same was admitted. In particular, evidence was admitted that Marr applied for the chief technology officer position at FNTS in January 2018; that he completed many interviews with FNTS personnel regarding that position in February, March, and April; that he thereafter negotiated with FNTS regarding employment terms for the position; that FNTS offered him the position on May 18; that he communicated his acceptance on May 20 and informed FNTS he would resign from West in the next few days; and that after accepting the job, he informed FNTS he intended to start on June 25, completed preemployment screening and drug testing, and arranged for parking at FNTS.

We do not believe the exhibits the district court excluded contained any information material to Marr's pursuit of a job at FNTS that the jury did not receive through other evidence. The jury received evidence that even before Marr began reporting to Carlson, he was pursuing employment outside of West. It also received evidence that Marr accepted the position at FNTS shortly before he emailed Carlson about his intent to resign from West and that he took steps to begin employment at FNTS even after giving West the opportunity to cure the issues he raised regarding his position at West. Because the jury received evidence that was substantially similar to the excluded exhibits, West's substantial rights were not unfairly prejudiced. See *Steinhausen, supra*.

West also contends that it was prejudiced by the district court's explanation of its hearsay ruling that it did not consider "these scheduling matters" to be "statements against any interest." It contends that this comment was made in front of the jury and would have led the jury to believe that in the district court's view, Marr's pursuit of a job at FNTS was irrelevant to whether he resigned for good reason under the agreements. We disagree that the district court's comment prejudiced West. The district court's comment was limited to "scheduling

matters," a great deal of evidence regarding Marr's pursuit of a job at FNTS was received into evidence, and the jury was instructed that it was not to consider the reasons for the district court's evidentiary rulings.

### (b) Admission of Evidence of
### Residence of West Executives

West next argues that the district court erred by allowing Marr to elicit testimony that several members of West's executive team lived and worked outside of Omaha. West argues that the residence and working location of West's executives was irrelevant and was introduced "solely in order to inflame the Omaha jury's animus towards West's New York-based owners." Brief for appellant at 31. Marr counters that the evidence was relevant to the question of whether his reporting responsibilities at West had been adversely changed. He testified at trial and argues now that not being able to work directly with individuals to whom he reported negatively impacted his standing within West.

[7] Again, we find it unnecessary to determine whether the district court's evidentiary ruling was erroneous, because even assuming it was, no prejudicial error resulted. Although West made relevance objections when Carlson was asked on cross-examination where a few members of West's executive team lived and worked, it did not object when he was asked the same question about several other West executives. Neither did West object when testimony was elicited from other witnesses that certain West executives did not live and work in Omaha. Testimony objected to which is substantially similar to evidence admitted without objection results in no prejudicial error. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

### (c) Admission of Evidence of Carlson's Age

West also argues that the district court abused its discretion by overruling West's relevance objection when Marr

asked Carlson about his age. Carlson testified that he was 28 years old. West argues that Carlson's age was not relevant to whether Marr's reporting responsibilities were adversely changed when he began reporting to Carlson.

[8,9] Although evidence that is irrelevant is inadmissible, Neb. Rev. Stat. § 27-402 (Reissue 2016), the bar for establishing evidentiary relevance is not a high one. See *Lindsay Internat. Sales & Serv. v. Wegener*, 301 Neb. 1, 917 N.W.2d 133 (2018). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 2016). To be relevant, the probative value of evidence need only be "something more than nothing." *State v. Lavalleur*, 289 Neb. 102, 115, 853 N.W.2d 203, 214 (2014). Furthermore, we have recognized that the exercise of judicial discretion is implicit in determining the relevance of evidence, and therefore a trial court's decision regarding relevance will not be reversed absent an abuse of discretion. See *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010).

We do not believe the district court abused its discretion by concluding that evidence of Carlson's age cleared the relatively low relevance threshold. Carlson was asked his age immediately before testimony was elicited from him, without objection, that he graduated from college in 2013 and about his subsequent employment history. In our view, it is not unreasonable to conclude that the fact that Marr was reporting to someone who—because of his relatively young age and relatively recent completion of his college education—likely did not have extensive experience has at least some tendency to suggest that Marr's reporting responsibilities had been materially altered. We acknowledge the probative value of Carlson's age may have been slight, but neither do we believe the district court abused its discretion by finding that it had some probative value. We therefore find that the district court did not abuse its discretion in overruling West's objection.

Because West has not demonstrated any prejudicial error in the district court's evidentiary rulings and its argument that it was entitled to a new trial depends wholly on the existence of such error, we find that the district court did not abuse its discretion in overruling West's motion for a new trial.

### 3. Marr's Request for Attorney Fees and Costs

Before concluding, we note that Marr argues in his brief that West's appeal is frivolous and that he should therefore receive an award of attorney fees and costs under Neb. Rev. Stat. § 25-824(2) (Reissue 2016). Our rules of appellate procedure require those seeking the award of such relief to file a motion supported by an affidavit justifying the amount sought "no later than 10 days after the release of the opinion of the court or the entry of the order of the court disposing of the appeal, unless otherwise provided by statute." Neb. Ct. R. App. P. § 2-109(F) (rev. 2021). If Marr wishes to pursue an award of attorney fees and costs under § 25-824(2), he may file such a motion in accordance with the rule set forth above.

### V. CONCLUSION

Because we find no reversible error on the part of the district court, we affirm.

Affirmed.