DEWEY HOUGHTON, APPELLANT, V.
BIG RED KENO, INC., A NEBRASKA CORPORATION,
ET AL., APPELLEES.
574 N.W. 2d 494

Filed February 27, 1998.   No. S-96-732.

Steven J. Lefler, of Lefler & Franklin Law Office, for appellant.

Patrick B. Griffin, of Kutak Rock, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The appellant, Dewey Houghton, purchased a keno ticket from the appellee Big Red Keno, Inc. Big Red Keno refused to pay the $200,000 Houghton contends he won on the ticket. It is undisputed that Houghton was mistakenly issued a ticket for a game after it had already been played, that Houghton overheard the winning numbers for the game, and that he wrote the numbers he overheard on his betting slip. It is also undisputed that Houghton did not intend to purchase a ticket for a game that had already been played and that he did not seek to void his ticket after it was purchased. The district court for Douglas County granted summary judgment in favor of Big Red Keno, and Houghton appeals. We conclude there was no meeting of the minds between the parties to form a contract; thus, Big Red Keno would not be required to pay prize money on a mistakenly issued ticket. Accordingly, we find that there is no issue of material fact and that Big Red Keno is entitled to judgment as a matter of law. The judgment of the district court is affirmed.

## BACKGROUND

On June 19, 1992, Houghton purchased a keno ticket at the Brothers Lounge in Omaha, Nebraska. Keno is a type of lottery in which, for each game played, players determine an amount of money to bet and select up to 20 numbers from a total of 80 possible numbers by marking those numbers on a betting slip. Players then take the betting slip to a "keno writer," who inputs the selected numbers into a computer, which in turn generates a paper "ticket" showing the game number played, numbers selected by the player, and the amount of the bet. After a period of approximately 5 minutes, the game is "closed" to any further bets, and 20 numbers are drawn randomly using a blower machine or a random number generator. A player wins if he or she correctly matches some or all of the numbers on the paper ticket with the numbers drawn randomly by the blower machine. The amount of money won is dependent upon the total amount of numbers chosen by the player and the amount of the numbers that are guessed correctly. The rules of keno and the amounts of prize money that can be won are printed in a document called the "Pay Book."

Keno games at Big Red Keno are conducted approximately every 5 minutes throughout the day at the main location. Each game is separately numbered, and winners are tracked by computer. Outside the main location, the same keno games are also played at satellite locations, such as the Brothers Lounge, through the use of a computer link. Sometimes, there are also audio links between the main location and satellite locations. The Nebraska Department of Revenue regulates keno and requires that games played at a satellite location be closed at the same time they are closed at the main location. The regulations also state that no keno ticket may be written after a game has closed and the number selection process has begun.

Each keno betting ticket states on the front that it is subject to conditions printed on the back of the ticket and in the Pay Book. The reverse side of the keno ticket states:

> This bet is accepted subject to the rules of the game set forth below and in the Big Red Keno Pay Book, and by playing the game all players accept such rules. If you do not have a Pay Book, request one before playing.

The ticket further states that errors in the ticket must be corrected before the game commences and before leaving the window, and that liability for errors is limited to a refund of the purchase price, which must be requested before the game commences. The rules of the game listed in the Pay Book state:

> Big Red Keno reserves the right to verify the legitimacy of all prizes. . . . Big Red Keno reserves the right to disclaim the payment of prizes if the balls or equipment have been tampered with or if the procedures prescribed for the conduct of the game by the City of Omaha or the State of Nebraska have been violated.

While Houghton was at the Brothers Lounge on June 19, 1992, the lounge experienced problems with the computer link between the main keno location and its satellite location. The computer link was down for a period of approximately 30 minutes, during which time keno games continued to be played at the main keno location. Brothers Lounge also maintained an audio link with the main location that audibly broadcast the winning numbers of the games at the main location as they were being played. During the time the computer was down at the

Brothers Lounge, game No. 480 was played and its winning numbers were broadcast over the audio system at the lounge.

At the time the winning numbers for game 480 were broadcast, Houghton had filled out several betting slips and was waiting for the computer link to be reestablished so that he could place his bets. While Houghton was waiting, he heard the numbers of the games at the main location being broadcast, threw away his previously marked betting slips, and filled out two new slips that were marked with numbers he heard over the audio system. At some point after the completion of game 480, the computer system began working again and Houghton placed his bets. Although game 480 had been played approximately 13 minutes before Houghton placed his bets, he received a ticket that listed game 480 as one of the games he participated in. As a result, Houghton held a ticket for game 480, even though the ticket was purchased after that game had been played. The record includes an affidavit from Houghton stating that he did not intend to bet on a game that had already been played. Houghton did not attempt to have his ticket voided or corrected after he received it. A subsequent computer scan of the ticket at the Brothers Lounge showed it to be a "winning" ticket in the amount of $200,000.

Houghton went to the main keno site to attempt to collect on the ticket. However, the Charitable Gaming Division of the Nebraska Department of Revenue determined that Houghton's ticket was mistakenly issued in violation of the procedures prescribed for the conduct of the game of keno by the State of Nebraska. Following this determination and a review of the keno rules, statutes, and regulations, Big Red Keno determined that Houghton's ticket was invalid and did not pay him the prize money for his ticket.

Although Big Red Keno did not pay Houghton his prize money, the record indicates that Big Red Keno had sometimes authorized the payment of prize money on losing tickets when a computer scan of the ticket mistakenly showed it as a winning ticket. The record also indicates that Big Red Keno had previously chosen to pay Houghton $1,000 on a ticket that should have won only $30 when there had been an error made by the keno writer.

Houghton brought a contract action against Big Red Keno in district court. Big Red Keno counterclaimed, seeking damages for fraud and conspiracy, and requesting costs and attorney fees. In August 1994, a motion by Big Red Keno for summary judgment on Houghton's claim was denied. Following additional discovery and the transfer of the case to a different judge, Big Red Keno renewed its summary judgment motion on Houghton's claim. Houghton also moved for summary judgment. The district court granted Big Red Keno's motion, and Houghton appeals.

## ASSIGNMENT OF ERROR

Houghton assigns as error the district court's action in sustaining Big Red Keno's motion for summary judgment and dismissing his petition.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997); *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997).

## ANALYSIS

Houghton contends that summary judgment was improper because there are issues of material fact in the case. Specifically, Houghton argues that whether there was an element of chance in the game played by Houghton, whether Houghton received the wrong ticket due to human error or computer error, and whether Big Red Keno may have chosen to honor some tickets and not others, are all issues of material fact. Big Red Keno contends that summary judgment was appropriate because based on undisputed facts, either no contract was formed or any contract that was formed was not enforceable.

Houghton brought his action based on contract principles. This court has never addressed the issue of which principles of law govern actions involving lotteries or keno gambling.

However, numerous jurisdictions have held that a lottery winner's entitlement to a prize is governed by principles of contract law. *Peterson v. District of Columbia Lottery*, 673 A.2d 664 (D.C. App. 1996); *Haynes v. Department of Lottery*, 630 So. 2d 1177 (Fla. App. 1994); *Parsons v. South Dakota Lottery Com'n*, 504 N.W.2d 593 (S.D. 1993); *Driscoll v. Dept. of Treasury*, 265 N.J. Super. 503, 627 A.2d 1167 (1993); *Thao v. Control Data Corp.*, 57 Wash. App. 802, 790 P.2d 1239 (1990); *Valente v. Rhode Island Lottery*, 544 A.2d 586 (R.I. 1988); *Ruggiero v. State Lottery Com'n*, 21 Mass. App. 686, 489 N.E.2d 1022 (1986); *Coleman v Lottery Bureau*, 77 Mich. App. 349, 258 N.W.2d 84 (1977).

To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995); *Cimino v. FirsTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995). A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *Hoeft v. Five Points Bank, supra.*

In the instant case, it is undisputed that Houghton did not intend to purchase a ticket for a game that had already been closed, nor do the parties contend that Big Red Keno represented to Houghton that it would sell him a ticket for a game that had been played or that Big Red Keno would assent to pay Houghton for winnings on a mistakenly issued ticket. Accordingly, there was no binding mutual understanding between Houghton and Big Red Keno regarding a contract. Under these circumstances, the "meeting of the minds" necessary in order to form a contract was not present. See, e.g., *Driscoll v. Dept. of Treasury, supra* (absent evidence of representation made by seller or request made by purchaser, mutual assent was lacking when lottery ticket was purchased for different drawing than purchaser expected).

Houghton argues that whether the mistake was human error or computer error and whether there was an element of chance to the game are issues of fact. However, neither of these facts is material to the issue of whether there was mutual assent of the parties to contract. Houghton also cites instances where Big

Red Keno paid for tickets that were issued by mistake, contending that Big Red Keno cannot choose to honor some contracts and not others. However, this also does not affect the issue of mutual assent. In addition, because Big Red Keno is allowed discretion under the rules of the game to refrain from paying prize money in instances where tickets have been issued in violation of the rules, Big Red Keno clearly can choose to pay some mistakenly issued tickets and not others.

We conclude there was a lack of mutual assent between the parties to create a contract that would require Big Red Keno to pay prize money on a mistakenly issued ticket. Accordingly, in regard to Houghton's contract claim, there is no issue of material fact and Big Red Keno is entitled to judgment as a matter of law.

AFFIRMED.