COMMUNITY FIRST STATE BANK, A NEBRASKA CORPORATION, FORMERLY KNOWN AS THE ABBOTT BANK, APPELLANT, V. HOWARD P. OLSEN, JR., AND SIMMONS, OLSEN, EDIGER & SELZER, P.C., APPELLEES.

587 N.W. 2d 364

Filed December 4, 1998.    No. S-97-478.

Terence P. Boyle, of Boyle Partnership, P.C., and Patrick M. Flood, of Hotz & Weaver, for appellant.

William R. Johnson and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

This is an action for attorney malpractice and breach of fiduciary duty, arising from events surrounding the operation of The Abbott Bank (Bank) in Alliance, Nebraska. The Bank was sold to Community First Bankshares, Inc. (CFB), and became Community First State Bank (CFSB), the appellant in the present action. The appellees, Howard P. Olsen, Jr. (Olsen), and Simmons, Olsen, Ediger & Selzer (Firm), represented the Bank. The trial court granted summary judgment for Olsen and the Firm on the grounds that CFSB was not the real party in interest to bring this suit or, in the alternative, that malpractice claims are not assignable as a matter of law. We reverse, and remand for further proceedings.

## BACKGROUND

Until its sale to CFB, the Bank was owned by Abbott Bank Group, Inc. (ABGI). James E. Abbott was the majority shareholder in ABGI, which in turn owned 99 percent of the Bank's stock. Abbott was also the Bank's chairman of the board from January 1987 until its sale.

In 1993, Olsen was a Nebraska attorney practicing in Scottsbluff, Nebraska, with the Firm. Both Olsen and the Firm are defendants in this suit. There is no indication in the record that either Olsen or the Firm had any contact with the Bank prior to December 1993.

In December 1993, Olsen met with Richard Chapin, the president and a director of the Bank, and three other bank officers

(collectively officers). The officers were concerned about certain practices of their employer and consulted Olsen for advice on how to report these practices to banking regulators and what the consequences of such action might be.

At Chapin's request, Olsen helped to arrange and attended a meeting in January 1994 between the officers and representatives of the Nebraska Department of Banking and Finance (Banking Department). Representatives of the Federal Deposit Insurance Corporation (FDIC) participated in this meeting via telephone. The meeting centered on possible legal violations by the Bank involving the role of Richard L. Gordon in the Bank's management.

Gordon, a Nebraska attorney, had been general counsel for the Bank since 1987. Gordon was never elected or appointed an officer or director of the Bank, nor was he licensed by the state to serve as an executive officer. Nevertheless, the officers were concerned that Gordon was actually serving as an executive officer of the bank by virtue of the powers invested in him by Abbott. If true, this would constitute a violation of Nebraska law and banking regulations.

As a result of the January 1994 meeting, the Banking Department and the FDIC initiated investigations of the Bank. On March 10, 1994, the Banking Department issued an emergency order prohibiting termination of the Bank's current officers and directors. On March 11, a second emergency order was issued, ordering the Bank to cease and desist from allowing Gordon to act as an executive officer of the Bank or to manage, control, direct, or otherwise interfere with any aspect of the ongoing business of the Bank, and ordering Gordon to cease such activity.

The Bank's executive committee then voted to appoint Olsen and the Firm as general counsel, replacing Gordon and his firm. This decision was ratified by the boards of directors of the Bank and ABGI.

Regulatory hearings commenced, and the hearing officer submitted his recommendations to the director of the Banking Department. These recommendations generally exonerated Gordon and the Bank from any wrongdoing. The Bank and the Banking Department submitted exceptions to the recommenda-

tions. Olsen, as general counsel for the Bank, submitted the Bank's exceptions at the direction of the Bank's executive committee.

In December 1994, the director of the Banking Department issued his findings of fact, conclusions of law, and order. The director rejected many of the hearing officer's recommendations and concluded that Gordon had indeed been acting as an executive officer and that the Bank had allowed him to do so. The director ordered the March 11 emergency order to remain in effect and divided costs equally between Gordon, the Bank, Abbott, and the Banking Department. No party appealed the director's findings, conclusions, or order.

In May 1995, ABGI merged with CFB pursuant to a merger agreement. Prior to the merger, Abbott, acting as chairman of the board, executed and delivered to himself a document titled "Assignment," which purported to give Abbott the right to any recoveries from this suit against Olsen, as well as the right to prosecute the action.

The parties to this suit stipulated that "[CFSB], formerly known as [the Bank], has no right, title or interest to any proceeds or recoveries that may result from the above-captioned cause of action." In his affidavit, Gary Knutson, senior vice president of CFB and a director of CFSB, states that "[a]side from this litigation, CFB has no intention and will not separately bring an action against the defendants in this case for the claims alleged in the Petition herein." In his affidavit, Stanley E. Foss, chairman and chief executive officer of CFSB, states that "[a]side from this litigation, Community First State Bank has no intention and will not separately bring an action against the defendants in this case for the claims alleged in the Petition herein."

In July 1995, the Bank filed suit against Olsen and the Firm in Douglas County, alleging claims for attorney malpractice and breach of fiduciary duty. The amended petition, titled in the name of CFSB, added further factual allegations and exhibits and again stated claims for attorney malpractice and breach of fiduciary duty. The amended petition alleged that Olsen, in his capacity as counsel for the Bank, and the Firm took unauthor-

ized positions inimical to the best interests of the Bank; violated their duty of confidentiality; failed to disclose conflicts of interest; and acted as informants against the Bank.

Olsen and the Firm's answer denied the merits of the claim and raised as a defense that CFSB was not the real party in interest because of the assignment to Abbott.

Olsen and the Firm moved for summary judgment. The trial court sustained Olsen and the Firm's motion for summary judgment, finding (1) that there is no genuine issue of material fact; (2) that as a matter of law, CFSB is not the real party in interest to bring this action; and (3) that notwithstanding CFSB's standing as the real party in interest, the action for legal malpractice is as a matter of law not assignable. CFSB timely appealed.

## ASSIGNMENTS OF ERROR

CFSB assigns that the trial court erred in (1) ruling that CFSB was not the real party in interest, (2) finding that the Bank's assignment to Abbott violated this court's rule against the assignment of attorney malpractice claims, (3) dismissing CFSB's suit rather than voiding the assignment and allowing the suit to proceed, (4) dismissing the separate claim for breach of fiduciary duty, and (5) sustaining Olsen and the Firm's motion for a change of venue.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998); *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998).

## ANALYSIS

### EFFECT OF ASSIGNMENT

The first step in analyzing the propriety of summary judgment in this case is to determine what effect, if any, the purported assignment of the malpractice claims to Abbott has on the suit.

The document in question is titled "Assignment," and is reproduced here in its entirety:

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, THE ABBOTT BANK ("TAB") does hereby agree to assign to JAMES E. ABBOTT ("Abbott") all right, title, and interest to any proceeds or recoveries from a cause of action captioned The Abbott Bank v. Howard Olsen, et al. filed in the District Court for Douglas County, Nebraska (the "Action"). Abbott agrees to bring and prosecute the Action solely for the benefit of and on behalf of TAB or the shareholders of Abbott Bank Group, Inc., on May 10, 1995. Abbott agrees to receive and to hold any proceeds and recoveries from the Action as a fiduciary, for distribution to said shareholders pro rata in accordance with their respective interests in the Merger Consideration provided for in the Agreement and Plan of Merger, dated as of November, [sic] 28, 1994, between Abbott Bank Group, Inc. and Community First Bankshares, Inc.

Abbott agrees to indemnify and hold TAB harmless against any and all losses, claims, damages or liabilities to which it may become subject to [sic] as a result of or in connection with the Action, including any claim or counterclaim against TAB, and to reimburse TAB for any legal or other expenses incurred in connection therewith.

This assignment was dated May 10, 1995, and signed by Abbott as chairman of the Bank and as assignee.

A claim for legal malpractice cannot be assigned, because of public policy considerations concerning the personal nature and confidentiality of the attorney-client relationship. *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994). We find that because this document grants both the proceeds of this action and the right to prosecute it, it is an assign-

ment of the cause of action. To hold otherwise would undermine the same public policy rationale upon which we decided *Earth Science Labs. v. Adkins & Wondra, P.C., supra.*

As an assignment of a cause of action for malpractice, this document violates public policy and the rule enunciated in *Earth Science Labs. v. Adkins & Wondra, P.C., supra.* Therefore, we hold that the document is void in its entirety. The question remains, however, as to what effect this holding has on the trial court's granting of summary judgment.

Although in *Earth Science Labs. v. Adkins & Wondra, P.C., supra,* we affirmed the trial court's dismissal of the claim, we cannot do so in this case. In *Earth Science Labs.,* the claim belonged to Sorber Chemical, Inc., and the invalid assignment was to Earth Science Laboratories, Inc. Earth Science had brought the suit under its own name after acquiring Sorber's assets at a bankruptcy sale. When the assignment was found to be invalid, Earth Science ceased to be the proper plaintiff. The petition could not be corrected by amendment because Sorber no longer existed to prosecute the claim.

In the present case, it is clear that suit was brought in the name of CFSB, the real party in interest. CFSB allowed this suit in its name under the erroneous legal impression that the assignment to Abbott was valid. Although the affidavits of Knutson and Foss seem to indicate that CFSB has no interest at all in suing Olsen and the Firm, the phrase in these affidavits "aside from this litigation" creates a fact question as to whether CFSB has an interest in pursuing the present litigation.

Because of this question as to CFSB's intention to proceed with the lawsuit, we reverse the trial court's dismissal of this action and remand the cause for such further action as CFSB may wish to take.

### FIDUCIARY DUTY CLAIM

CFSB assigns as error that its claim for breach of fiduciary duty was dismissed along with its claim for malpractice. This court has held that any professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is malpractice. *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989). Although *Olsen v. Richards, supra,* interpreted Neb. Rev. Stat. § 25-222 (Reissue 1995),

which sets the statute of limitations for professional negligence claims, we see no reason why claims for breach of fiduciary duties should not be similarly classified for purposes of the rule against assigning malpractice claims.

## CHANGE OF VENUE

CFSB's final assignment of error is that the trial court erred in sustaining Olsen and the Firm's motion for change of venue. Any civil action may be transferred to the district court of any county in the state "[f]or the convenience of the parties and witnesses or in the interest of justice . . . ." Neb. Rev. Stat. § 25-410 (Reissue 1995). Where the record does not show an abuse of discretion, a ruling on a motion to transfer venue will not be disturbed on appeal. *Larson v. Demuth*, 252 Neb. 668, 564 N.W.2d 606 (1997); *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Wilson v. Misko, supra*; *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993). Reviewing the affidavits filed in relation to this motion, it cannot be said that the judge's choice to grant the motion is untenable or has unfairly deprived CFSB of a substantial right or just result. Therefore, the trial court acted within its discretion in granting Olsen and the Firm's motion for change of venue.

Because we find that the trial court acted within its discretion in sustaining the motion under § 25-410, we need not address whether venue was initially proper under Neb. Rev. Stat. § 25-403.01 (Reissue 1995).

## CONCLUSION

The cause of action in this case belongs to and must be prosecuted by CFSB. Dismissal of this suit was improper, and therefore the judgment is reversed and the cause is remanded to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.