Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

- 606 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

MILLARD GUTTER COMPANY, A CORPORATION
DOING BUSINESS AS MILLARD ROOFING AND
GUTTER, APPELLANT, V. SHELTER MUTUAL
INSURANCE COMPANY, APPELLEE.
___ N.W.2d ___

Filed October 14, 2022.    No. S-20-907.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's
   grant of a motion to dismiss on the pleadings is reviewed de novo by
   an appellate court, accepting the factual allegations in the complaint as
   true and drawing all reasonable inferences of law and fact in favor of the
   nonmoving party.
2. **Actions: Parties: Standing: Judgments: Jurisdiction: Appeal and
   Error.** Whether a party who commences an action has standing and is
   therefore the real party in interest presents a jurisdictional issue. When a
   jurisdictional question does not involve a factual dispute, determination
   of the issue is a matter of law which requires an appellate court to reach
   a conclusion independent from the trial court.
3. **Pleadings: Judges: Words and Phrases: Appeal and Error.** An order
   of the district court requiring a complaint to be made more definite and
   certain will be sustained on appeal unless it clearly appears that the
   court abused its discretion. A judicial abuse of discretion exists when the
   reasons or rulings of a trial judge are clearly untenable, unfairly depriv-
   ing a litigant of a substantial right and denying just results in matters
   submitted for disposition.
4. **Actions: Parties: Standing.** Whether a party who commences an action
   has standing, and is therefore the real party in interest, presents a juris-
   dictional issue.
5. **Actions: Parties.** The purpose of Nebraska's real party in interest
   statute, Neb. Rev. Stat. § 25-301 (Reissue 2016), is to prevent the
   prosecution of actions by persons who have no right, title, or interest in
   the cause.

- 607 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

6. **Actions: Parties: Standing.** The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of controversy.

7. **Standing.** The focus of a court's standing inquiry is not on whether the claim being advanced has merit; it is on whether the plaintiff is the proper party to assert the claim.

8. **Assignments: Parties.** Generally, if there has been a valid and complete assignment of rights, then the assignee is the real party in interest, but if the assignment is invalid, then the purported assignor remains the real party in interest.

9. **Assignments: Words and Phrases.** An assignment is the transfer of some identifiable property, claim, or right from the assignor to the assignee.

10. **Assignments.** Fundamental to the law of assignments is the concept that an assignee takes nothing more by an assignment than the assignor had; an assignor cannot assign any rights greater than that which he or she held.

11. **Assignments: Intent.** The intention of the assignor must be to transfer a present interest in a debt or fund or subject matter.

12. **Insurance: Breach of Contract: Assignments: Standing.** In the absence of a statute to the contrary, an insured may validly assign a postloss breach of contract claim for insurance proceeds due under a homeowner's policy, and the assignee of such a claim has standing to bring the breach of contract claim in its own name.

13. **Standing: Pleadings: Evidence: Words and Phrases.** When standing is challenged at the pleadings stage, before an evidentiary hearing and before any evidence outside of the pleadings is admitted, it is deemed a facial challenge.

14. **Standing: Pleadings: Proof.** When considering a facial challenge to standing, the trial court will typically review only the pleadings to determine whether the plaintiff has alleged sufficient facts to establish standing.

15. **Torts: Insurance: Contracts.** The general theory underlying the tort of bad faith is that the law implies a covenant of good faith and fair dealing as a result of the contractual relationship between the insurer and the insured.

16. **Torts: Insurance: Claims: Proof.** To establish a claim of first-party bad faith, a policyholder must show both an absence of a reasonable basis for denying benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

17. **Torts: Intent.** An action for first-party bad faith is an intentional tort.

- 608 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

18. **Actions: Insurance: Contracts.** A cause of action for insurer bad faith is separate from, and not dependent on, a cause of action for breach of the insurance policy, although the two may share facts in common.

19. **Claims: Torts: Insurance: Damages: Proximate Cause.** Because claims of bad faith are grounded in tort, traditional tort damages, including damages for mental distress and for economic loss, are recoverable when they are proximately caused by the insurer's tortious bad faith conduct.

20. **Torts: Insurance: Claims.** Only (1) an injured policyholder who is also a covered person or (2) a policyholder who is also a beneficiary may bring a cause of action in tort against the policyholder's insurer for failure to settle the policyholder's insurance claim.

21. **Torts: Claims: Assignments: Death: Abatement, Survival, and Revival.** The common-law rule is that a right of action is not assignable where the tort causes a strictly personal injury and does not survive the death of the person injured.

22. **Torts: Assignments: Statutes.** Where only the proceeds of personal injury tort litigation, and not control of the litigation, have been assigned, such assignments are valid and enforceable under Nebraska law unless there is a statute prohibiting such assignment.

23. **Torts: Insurance: Claims: Assignments.** A policyholder cannot validly assign the right to prosecute or control a tort action for first-party bad faith.

24. **Torts: Insurance: Assignments.** A policyholder's postloss assignment of insurance proceeds neither increases nor changes the insurer's obligations under the insurance policy.

25. **Pleadings.** Motions to make more definite and certain are addressed to the sound discretion of the trial court.

26. **Pleadings: Time: Dismissal and Nonsuit.** A plaintiff's failure to file an amended pleading within the time specified by the court's order is a basis for dismissing the action without prejudice under Neb. Rev. Stat. § 25-601(5) (Reissue 2016).

27. **Courts: Dismissal and Nonsuit.** In addition to the statutory authority under Neb. Rev. Stat. § 25-601 (Reissue 2016), courts have inherent authority to dismiss an action for violation of a court order. And pursuant to their inherent authority, courts can dismiss the action with or without prejudice.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

- 609 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

Michael T. Gibbons, Raymond E. Walden, and Christopher D. Jerram, of Woodke & Gibbons, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In connection with a 2013 storm, Millard Gutter Company (Millard Gutter) obtained assignments from various policyholders of Shelter Mutual Insurance Company (Shelter). Millard Gutter then filed suit against Shelter in its own name, as assignee, seeking to recover damages for breach of the insurance contracts and for first-party bad faith in failing to settle the claims. The district court dismissed the action, and Millard Gutter appeals. The primary question on appeal is whether Millard Gutter has standing to assert first-party bad faith claims against Shelter. We affirm the judgment of the district court.

## I. BACKGROUND

### 1. Complaint

On April 9, 2018, Millard Gutter filed a complaint against Shelter in the district court for Douglas County. Millard Gutter brought the action in its own name as "the assignee of various insured property owners" who purchased insurance from Shelter and whose property "sustained loss due to a storm occurring in 2013." The assignments were not attached to the complaint, but were described therein as "valid assignments of the right to proceeds under an insurance policy issued by Shelter."

The complaint alleged that Millard Gutter provided Shelter with copies of the assignments and made claims for storm damage to the insured properties. The complaint broadly alleged that all of the Shelter policies were in full force and effect, the storm damage was covered, and all conditions precedent under the policies had been met. The complaint did not identify the addresses or locations of the insured properties, the dates of

- 610 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

the alleged storm damage, or the dates the assignments were made. Millard Gutter alleged that Shelter breached the policies when it "failed to make direct payment to [Millard Gutter]" and failed to include Millard Gutter "as a payee on any checks or other payments for the loss." The complaint also alleged that Shelter's failure to pay Millard Gutter amounted to "bad faith and constitutes a separate violation of the implied covenant of good faith and fair dealing owed under the insurance contracts." The complaint prayed for unspecified general and special damages in an amount to be determined at trial.

## 2. Preanswer Motions

Shelter moved to dismiss the bad faith claims pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6), arguing the complaint failed to state a claim because Millard Gutter lacked standing to assert a first-party bad faith claim. Additionally, Shelter moved for a more definite statement under § 6-1112(e), arguing that without more detail identifying the insured properties and the nature and scope of the alleged assignments, Shelter could not reasonably form a responsive pleading. More specifically, Shelter argued that it could not discern, from the allegations of the complaint, which claims the policyholders had purportedly assigned, where the insured properties were located, whether all named insureds had executed the assignments, or whether the assignments were made preloss or postloss.

In an order entered March 26, 2019, the district court sustained the motion for a more definite statement, finding the original complaint was "insufficient to identify the homeowners and put [Shelter] on notice of each individual homeowner's claim." Millard Gutter was ordered to file, within 14 days, an amended complaint which identified the pertinent policy numbers and attached the assignments upon which it relied. Millard Gutter never filed an amended complaint.

In a separate order entered April 8, 2019, the court granted Shelter's motion to dismiss the bad faith claims for lack of standing. The court recited the rule from *Braesch v. Union Ins.*

- 611 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

*Co.*[1] that only a policyholder who is also a covered person or beneficiary under the policy has standing to bring a tort action against an insurer for first-party bad faith. The court then reasoned that Millard Gutter, a nonpolicyholder, lacked standing under *Braesch* to assert claims for first-party bad faith in its own name.

The court also considered, and rejected, Millard Gutter's argument that it had standing to assert the bad faith claims by virtue of the alleged assignments. First, the court recited the general rule that only a present interest may be validly assigned,[2] and it noted that the complaint contained no factual allegations suggesting that any Shelter policyholder had an existing bad faith claim at the time the assignments were made. Additionally, the court reasoned that even if the assignments purported to include an existing claim for first-party bad faith, allowing Millard Gutter to bring such claims in its own name would violate the rule announced in *Mutual of Omaha Bank v. Kassebaum*,[3] which held that the proceeds of personal injury tort litigation may be validly assigned, but control of the litigation may not. The court therefore concluded that Millard Gutter's complaint did not contain sufficient factual allegations to establish standing to assert claims of first-party bad faith.

### 3. Show Cause and Dismissal With Prejudice

After the court ruled on the preanswer motions, the case remained pending with no apparent activity for about 17 months. Then, in August 2020, the court sua sponte issued an

---

[1] *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), *disapproved on other grounds, Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998).

[2] *Krohn v. Gardner*, 248 Neb. 210, 533 N.W.2d 95 (1995) (holding assignment must transfer present interest in debt, fund, or subject matter).

[3] *Mutual of Omaha Bank v. Kassebaum*, 283 Neb. 952, 814 N.W.2d 731 (2012).

- 612 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

order for the parties to appear and show cause why the action should not be dismissed for lack of progression.

Our bill of exceptions does not include the show cause hearing, so it is not clear what, if any, evidence or argument was offered by Millard Gutter. But other portions of the record reflect that during the hearing, Millard Gutter advised the court it would not be filing an amended complaint despite the court's prior rulings. In response, Shelter moved to dismiss the entire action with prejudice.

After a hearing on Shelter's motion, the court entered an order dismissing the entire action with prejudice. The court recited the procedural history of the case, including the basis for the court's prior rulings dismissing the bad faith claims and ordering that Millard Gutter file an amended complaint on the remaining breach of contract claims. The dismissal order also stated:

> [Millard Gutter] has not at any time filed an Amended Complaint in this case. Nor has [it] filed anything else in this case, despite the Court's Order on August 10, 2020 directing that the parties appear at a hearing on September 1, 2020 and show cause why the action should not be dismissed for lack of prosecution. At that hearing, [Millard Gutter's] counsel advised that [Millard Gutter] is standing on its original Complaint.
>
> . . . The court agrees with [Shelter] that it is necessary under the circumstances to go beyond dismissal for lack of prosecution and dismiss the action on the basis that [Millard Gutter] failed to comply with the Court's specific Order to file an Amended Complaint by April 24, 2019, and has instead chosen to stand on the Complaint that the Court found to be insufficient without a more definite statement[,] and on the bad faith claims that the Court also found to be insufficient.
>
> . . . The Court determines that it is appropriate to dismiss the breach of contract claims as a sanction for noncompliance with that Order . . . .

- 613 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

. . . The Court also finds that without the assignments and specific identifying information about the alleged homeowners executing the assignments, the Court cannot determine that [Millard Gutter] has standing to assert the claims of homeowners alleged to be insured by [Shelter] and therefore finds that the Court lacks subject matter jurisdiction over this action.

. . . The Court also reaffirms its dismissal of the bad faith claims, which were not included in the leave to amend.

Millard Gutter timely moved to alter or amend the order of dismissal, arguing that under Neb. Rev. Stat. § 25-601 (Reissue 2016), the dismissal should have been without prejudice. After a hearing, the court entered a slightly modified order of dismissal, which generally recited the same rationale for dismissal and, once again, dismissed the entire action with prejudice.

Millard Gutter filed a timely notice of appeal. We moved the appeal to our docket on our motion.[4]

## II. ASSIGNMENTS OF ERROR

Millard Gutter assigns, restated and consolidated, that the district court erred in (1) granting the motion to dismiss the bad faith claims for lack of standing, (2) granting the motion to make more definite as to the breach of contract claims and ordering Millard Gutter to file an amended complaint identifying the policies and attaching the assignments, and (3) dismissing the entire action with prejudice once Millard Gutter elected to stand on its original complaint.

## III. STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo by an appellate court, accepting

---

[4] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020); Neb. Ct. R. App. Prac. § 2-102(C) (rev. 2022).

- 614 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

the factual allegations in the complaint as true and drawing all reasonable inferences of law and fact in favor of the nonmoving party.[5]

[2] Whether a party who commences an action has standing and is therefore the real party in interest presents a jurisdictional issue.[6] When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court.[7]

[3] An order of the district court requiring a complaint to be made more definite and certain will be sustained on appeal unless it clearly appears that the court abused its discretion.[8] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[9]

## IV. ANALYSIS

### 1. Standing to Assert Claim of First-Party Bad Faith

[4] In Millard Gutter's first assignment of error, it argues the district court erroneously concluded that Millard Gutter did not have standing to assert claims of first-party bad faith against Shelter. Whether a party who commences an action has standing, and is therefore the real party in interest, presents a jurisdictional issue.[10]

---

[5] *SID No. 67 v. State*, 309 Neb. 600, 961 N.W.2d 796 (2021).

[6] *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020).

[7] *Id.*

[8] See *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993).

[9] *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020).

[10] *Valley Boys, supra* note 6.

- 615 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

[5-7] Nebraska's real party in interest statute provides in part that "[e]very action shall be prosecuted in the name of the real party in interest."[11] The purpose of that section is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.[12] The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of controversy.[13] The focus of our standing inquiry is not on whether the claim being advanced has merit; it is on whether Millard Gutter is the proper party to assert the claim.[14]

### (a) Assignee as Real Party in Interest

[8-11] As a general proposition, we have recognized that if there has been a valid and complete assignment of rights, then the assignee is the real party in interest, but if the assignment is invalid, then the purported assignor remains the real party in interest.[15] An assignment is the transfer of some identifiable property, claim, or right from the assignor to the assignee.[16] Fundamental to the law of assignments is the concept that an assignee takes nothing more by an assignment than the assignor had;[17] an assignor cannot assign any rights greater than that which he or she held.[18] The intention of the assignor must be to transfer a present interest in a debt or fund or subject matter.[19]

---

[11] Neb. Rev. Stat. § 25-301 (Reissue 2016).

[12] *Valley Boys, supra* note 6.

[13] *Id.*

[14] See *Egan v. County of Lancaster*, 308 Neb. 48, 952 N.W.2d 664 (2020).

[15] See *Valley Boys, supra* note 6.

[16] 6A C.J.S. *Assignments* § 2 (2016).

[17] *Id.*, § 91.

[18] *Id.*

[19] See, *Krohn, supra* note 2; *Craig v. Farmers Mut. Ins. Co.*, 239 Neb. 271, 476 N.W.2d 529 (1991).

- 616 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

[12] In *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*,[20] we held that in the absence of a statute to the contrary, an insured may validly assign a postloss breach of contract claim for insurance proceeds due under a homeowner's policy. We also held that the assignee of such a claim has standing to bring the breach of contract claim in its own name. Notably, *Millard Gutter* limited its holding to assignments made after the occurrence of a loss, reasoning that "'[a]fter a loss occurs, the indemnity policy is no longer an executory contract of insurance [but rather] a vested claim against the insurer and can be freely assigned or sold like any other chose in action . . . .'"[21] After concluding that postloss assignments of property damage claims were valid and enforceable, *Millard Gutter* suggested that "[i]f postloss assignments of storm damage claims are having a deleterious effect on insurers, they should present their concerns to the Legislature."[22]

In 2018, the Legislature responded by amending the Insured Homeowner's Protection Act,[23] to add specific provisions governing the validity of postloss assignments of benefits under property and casualty insurance policies covering residential real estate. Postloss assignments that do not comply with all the provisions of the act are deemed void.[24] However, because the events which gave rise to this action occurred before the effective date of such amendments, we leave for another day a detailed discussion of the act's provisions governing postloss assignments.

### (b) Facial Challenge to Standing

[13,14] In this case, Shelter's challenge to Millard Gutter's standing was raised and resolved at the pleadings stage. When

---

[20] *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 295 Neb. 419, 889 N.W.2d 596 (2016).

[21] *Id.* at 429, 889 N.W.2d at 603.

[22] *Id.* at 433, 889 N.W.2d. at 605.

[23] See Neb. Rev. Stat. §§ 44-8605 to 44-8608 (Cum. Supp. 2020).

[24] See § 44-8608.

- 617 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

standing is challenged at the pleadings stage, before an evidentiary hearing and before any evidence outside of the pleadings is admitted, it is deemed a "'facial challenge.'"[25] When considering a facial challenge to standing, the trial court will typically review only the pleadings to determine whether the plaintiff has alleged sufficient facts to establish standing.[26]

The complaint alleged that Millard Gutter "obtained valid assignments of rights under the policies issued by Shelter" and specifically described the nature of the rights assigned as "the right to proceeds under an insurance policy issued by Shelter." On appeal, Millard Gutter argues these allegations were sufficient to establish its standing, as an assignee, to assert not only breach of contract claims for insurance proceeds,[27] but also to assert tort claims for first-party bad faith against Shelter.

Regarding the claims of first-party bad faith, we understand Millard Gutter to advance two separate standing theories. First, Millard Gutter argues it has standing, as assignee, to assert any existing bad faith claims that Shelter's policyholders had when the assignments were made. Alternatively, Millard Gutter relies on the assignments to argue it can assert its own claims for first-party bad faith based on Shelter's postassignment conduct. We address each standing argument in turn.

### (c) Assignability of First-Party
### Bad Faith Claims

Millard Gutter broadly argues that the policyholders' existing first-party bad faith claims are assignable because there is "not a single Nebraska appellate court decision, which states that an assignee of a post-casualty loss claim cannot state a claim for bad faith."[28] Millard Gutter is correct that we have not previously addressed whether a policyholder can validly

---

[25] *SID No. 67, supra* note 5, 309 Neb. at 606, 961 N.W.2d at 802.

[26] *Id.*

[27] See, *Millard Gutter Co., supra* note 20; *Valley Boys, supra* note 6.

[28] Brief for appellant at 18.

- 618 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

assign an existing tort claim of first-party bad faith. We do so now, and begin by reviewing the relevant principles from our first-party bad faith cases.

### (i) First-Party Bad Faith

This court judicially recognized the tort of third-party bad faith in the 1962 case of *Olson v. Union Fire Ins. C*o.[29] and recognized the tort of first-party bad faith almost 30 years later in *Braesch*.[30] In *Braesch*, the court described the difference between the two torts as follows:

> [A] first-party bad faith cause of action is based upon allegations that the insurer, in bad faith, refuses to settle with its own policyholder insured, who thereby suffers some type of direct loss. . . . In contrast, a traditional third-party bad faith claim arises when an insurer wrongfully fails to settle a claim by a third party against an insured.[31]

[15] In *Braesch*, we said the general theory underlying the tort of bad faith is that the law implies a covenant of good faith and fair dealing as a result of the contractual relationship between the insurer and the insured.[32] In a later case, we emphasized that it is the breach of the covenant of good faith and fair dealing from which the insurer's tort liability springs, and we said the tort of first-party bad faith "embraces any number of bad faith settlement tactics, such as inadequate investigation, delays in settlement, false accusations, and so forth."[33]

[16,17] To establish a claim of first-party bad faith, a policyholder must show both an absence of a reasonable basis for denying benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable

---

[29] *Olson v. Union Fire Ins. Co.*, 174 Neb. 375, 118 N.W.2d 318 (1962).

[30] *Braesch, supra* note 1.

[31] *Id.* at 54-55, 464 N.W.2d at 776.

[32] See *Braesch, supra* note 1.

[33] *Ruwe v. Farmers Mut. United Ins. Co*., 238 Neb. 67, 74, 469 N.W.2d 129, 135 (1991).

- 619 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

basis for denying the claim.[34] Based on these elements, we have characterized first-party bad faith as an intentional tort, reasoning that "'"[b]ad faith" by definition cannot be unintentional.'"[35]

[18,19] We have explained that a cause of action for insurer bad faith is separate from, and not dependent on, a cause of action for breach of the insurance policy, although the two may share facts in common.[36] The damages recoverable for bad faith differ too; because claims of bad faith are grounded in tort,[37] traditional tort damages, including damages for mental distress[38] and for economic loss,[39] are recoverable when they are proximately caused by the insurer's tortious bad faith conduct.[40] Indeed, one of the justifications for recognizing the intentional tort of bad faith was concern that recoverable damages for breach of the insurance contract are inadequate to compensate policyholders for personal injuries suffered as a result of an insurer's tortious bad faith.[41]

[20] In Nebraska, only a policyholder has standing to bring a first-party bad faith claim against an insurer.[42] More specifically, "only (1) an injured policyholder who is also a 'covered person' or (2) a policyholder who is also a beneficiary may bring a cause of action in tort against the policyholder's insurer for failure to settle the policyholder's insurance claim."[43] In this case, Millard Gutter does not allege or argue that it is a Shelter policyholder. Instead, Millard Gutter argues that, by virtue of

---

[34] See *Ruwe, supra* note 33.

[35] *Braesch, supra* note 1, 237 Neb. at 57, 464 N.W.2d at 777.

[36] See *Braesch, supra* note 1.

[37] See *id.*

[38] *Id*.

[39] See *Ruwe, supra* note 33.

[40] See, *Braesch, supra* note 1; *Ruwe, supra* note 33.

[41] See, e.g., *id*.

[42] *Braesch, supra* note 1.

[43] *Id.* at 56, 464 N.W.2d at 776.

- 620 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

the postloss assignments from Shelter's policyholders, it has standing to bring any existing claims for first-party bad faith the policyholders had when they executed the assignments.

It is a question of first impression whether a policyholder can validly assign, to a nonpolicyholder, a cause of action for the tort of first-party bad faith. At oral argument, Millard Gutter suggested the question could be answered by applying the reasoning from *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*,[44] but that case answered a different question, and our analysis was limited to the assignability of postloss breach of contract claims. To determine whether a policyholder can validly assign a tort claim for first-party bad faith, we must examine our jurisprudence governing the assignability of tort actions.

### (ii) Assignability of Tort Actions

Not all tort claims are assignable under Nebraska law. A wrongful death cause of action cannot be assigned because it is authorized by statute, and "[t]he plain language of the statute allows only the personal representative to bring the action and only the widow, widower, or next of kin to benefit."[45] Moreover, although the law generally supports the assignability of rights, it does not permit assignments for matters of personal trust or confidence, or for personal services.[46] Applying this rule, we have held that claims for legal malpractice cannot be validly assigned in Nebraska because of public policy considerations concerning the personal nature and confidentiality of the attorney-client relationship.[47] And we have explained that if an assignment "grants both the proceeds of

---

[44] *Millard Gutter Co., supra* note 20.

[45] *Spradlin v. Dairyland Ins. Co.*, 263 Neb. 688, 692, 641 N.W.2d 634, 637 (2002). See Neb. Rev. Stat. § 30-810 (Reissue 2016).

[46] See *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994).

[47] *Id.* Accord, *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998).

- 621 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

[a legal malpractice] action and the right to prosecute it, it is an assignment of the cause of action" which is void as against public policy.[48]

[21] In *Kassebaum*, we considered whether an assignment of the unliquidated proceeds from a personal injury action was valid and enforceable under Nebraska law.[49] We described this as an issue of first impression and began our analysis by reciting the common-law rule that a right of action is not assignable where the tort causes a strictly personal injury and does not survive the death of the person injured.[50] We said this prohibition is grounded on two principles: (1) that prior to more recent statutory amendments, personal claims did not survive the death of the victim, and (2) that prohibiting the assignment of tort claims prevents champerty and maintenance.[51]

[22] In *Kassebaum*, we observed there was a split of authority in other jurisdictions regarding whether a party could assign the proceeds of personal injury litigation without violating this common-law prohibition. And after discussing the reasons in favor of and against allowing such assignments, we determined "the cases holding that an assignment of proceeds is enforceable to be the better reasoned position."[52] We thus adopted the rule that "[w]here only the proceeds of [tort] litigation, and not control of the litigation, have been assigned," such assignments are valid and enforceable under Nebraska law.[53] In other words, absent a statute to the contrary, Nebraska law generally allows a party to assign the *proceeds* from personal injury actions, but it does not allow assignment of the right to prosecute or control such actions.

---

[48] *Community First State Bank, supra* note 47, 255 Neb. at 622-23, 587 N.W.2d at 368.

[49] *Kassebaum, supra* note 3.

[50] *Id*. See, also, *Earth Science Labs., supra* note 46.

[51] *Kassebaum, supra* note 3.

[52] *Id.* at 959, 814 N.W.2d at 737.

[53] See *id.*

- 622 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

Here, the district court held that tort actions for first-party bad faith are subject to the assignability rule for personal injury actions announced in *Kassebaum*, and we agree. Actions for first-party bad faith are intentional torts, and plaintiffs in such actions are entitled to seek and recover traditional personal injury damages.[54] We conclude it is appropriate to apply the same assignability rules to actions for first-party bad faith as are applied to other strictly personal torts. And under that rule, the proceeds from such an action are assignable absent a statute to the contrary, but the right to prosecute or control such an action cannot be validly assigned.[55]

[23] As such, even assuming without deciding that the proceeds from first-party bad faith actions can be validly assigned under Nebraska law, we hold that a policyholder cannot validly assign the right to prosecute or control such an action. So, regardless of the validity for other purposes, the postloss assignments from Shelter's policyholders could not, as a matter of law, give Millard Gutter standing to prosecute the policyholders' tort actions for first-party bad faith against Shelter. Millard Gutter's arguments to the contrary are without merit.

### (d) Argument Based on Implied Covenant of Good Faith

Millard Gutter's alternative standing theory appears to be that it is asserting *its own* claim for first-party bad faith against Shelter. More specifically, Millard Gutter argues that once it obtained postloss assignments from Shelter's policyholders, it "stood in the shoes of each of the insureds."[56] And, as the assignee of the policyholders' rights to proceeds under the Shelter policies, Millard Gutter argues that Shelter owed it the same covenant of good faith and fair dealing that it owed its policyholders. Thus, according to Millard Gutter, it can assert a claim for first-party bad faith based on Shelter's failure "to

---

[54] See, *Ruwe, supra* note 33; *Braesch, supra* note 1.

[55] See *Kassebaum, supra* note 3.

[56] Brief for appellant at 14.

- 623 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

adjust the claim[s] in good faith and make prompt payment to Millard Gutter."[57]

There is no merit to Millard Gutter's alternative standing theory, because there is no legal basis for its contention that Shelter owed Millard Gutter any obligation of good faith and fair dealing. The implied covenant of good faith and fair dealing that Nebraska law imposes on insurers "is dependent upon a contractual relationship between the [policyholder] and the insurer."[58] There is no contractual relationship between Shelter and Millard Gutter, and the postloss assignments did not create one.

[24] Moreover, we soundly reject any suggestion that a policyholder's postloss assignment of insurance proceeds to a nonpolicyholder can somehow alter or expand the insurer's implied covenant of good faith and fair dealing under the policy, or create any contractual relationship between the insurer and the assignee. Our cases allowing postloss assignment of insurance proceeds plainly hold that "such an assignment neither increases *nor changes the insurer's obligations under the policy*."[59]

Here, the postloss assignments could not alter Shelter's obligations under the insurance policy or change the fact that Millard Gutter has no contractual relationship with Shelter. Consequently, there is no doctrinal basis for Millard Gutter to claim that Shelter owes it a covenant of good faith and fair dealing. And absent such a duty, there is no legal basis on which Millard Gutter can assert its own claim of first-party bad faith against Shelter. As we explained in *Braesch*, the tort of first-party bad faith does not extend to nonpolicyholder beneficiaries—even those who claim to have been harmed by

---

[57] *Id*.

[58] *Braesch, supra* note 1, 237 Neb. at 55, 464 N.W.2d at 776.

[59] *Valley Boys, supra* note 6, 306 Neb. at 939, 947 N.W.2d at 865 (emphasis supplied). Accord, *Kasel v. Union Pacific RR. Co.*, 291 Neb. 226, 231, 865 N.W.2d 734, 738 (2015) ("[a]n assignment does not affect or change any of the provisions of the contract").

- 624 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

an insurer's failure to settle with them—because nonpolicy-holders lack a contractual relationship with the insurer.[60] As a nonpolicyholder, Millard Gutter lacks standing to bring an action for first-party bad faith against Shelter.

In sum, both of Millard Gutter's standing theories fail as a matter of law. The district court correctly concluded that the allegations of Millard Gutter's complaint, even accepted as true, failed to establish that Millard Gutter has standing to assert first-party bad faith claims against Shelter.

For the sake of completeness, we note that under Nebraska's real party in interest statute, an action "shall not be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest."[61] But here, Millard Gutter has not assigned or argued that the district court erred by failing to allow Millard Gutter a reasonable opportunity to file an amended complaint joining or substituting the Shelter policyholders as plaintiffs for purposes of the first-party bad faith claims. And on this record, we can find no plain error related to § 25-301, particularly where, as we discuss later, it is apparent that Millard Gutter would have refused to file an amended complaint if allowed to do so.

## 2. No Abuse of Discretion in Ordering More Definite Statement

In its second assignment of error, Millard Gutter argues the court erred in granting Shelter's motion to provide a more definite statement. According to § 6-1112(e) of the pleading rules:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably

---

[60] See *Braesch, supra* note 1.

[61] § 25-301. See, also, *North Star Mut. Ins. Co. v. Stewart*, 311 Neb. 33, 47, 970 N.W.2d 461, 471 (2022) (holding when plaintiff is not real party in interest with standing to sue, "better practice" is to allow plaintiff reasonable period of time to amend complaint by either joining or substituting real party in interest before dismissing action).

- 625 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days or within such time as the court may fix, the court may strike the pleading or make such order as it deems just.

[25] Motions to make more definite and certain are addressed to the sound discretion of the trial court.[62] Rule 6-1112(e) requires the movant to identify the alleged deficiencies in the pleading and to specify the details that are reasonably needed to draft a responsive pleading. Shelter argued it could not tell from the complaint which claims had been assigned, whether the assignments were made preloss or postloss, whether all named insureds had executed the assignments, or whether the insured properties were located in the county where suit had been filed. It asserted that without knowing these details, it was unable to draft a responsive pleading or identify available policy defenses.

The district court granted the motion, but did not require all of the additional details requested by Shelter. Instead, the court ordered Millard Gutter to amend the complaint within 14 days to "include policy numbers and attach the assignment associated with each homeowner." This additional detail would presumably allow Shelter to identify the insured properties, the named insureds, and the assignors so it could draft a responsive pleading. On this record, we find no abuse of discretion in granting the motion to make more definite.

## 3. No Error in Dismissal With Prejudice

In its final assignment of error, Millard Gutter argues it was error to dismiss the entire action with prejudice. Millard

---

[62] See *Vodehnal v. Grand Island Daily Independent*, 191 Neb. 836, 218 N.W.2d 220 (1974).

- 626 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

Gutter argues that, pursuant to § 25-601, the dismissal should have been without prejudice. Section 25-601 provides in relevant part:

An action may be dismissed without prejudice to a future action . . . (3) by the court for want of necessary parties; . . . (5) by the court for disobedience by the plaintiff of an order concerning the proceedings in the action. In all other cases on the trial of the action the decision must be upon the merits.

[26,27] We have said the plaintiff's failure to file an amended pleading within the time specified by the court's order is a basis for dismissing the action without prejudice under § 25-601(5).[63] But in addition to the statutory authority under § 25-601, we have long recognized that courts have inherent authority to dismiss an action for violation of a court order.[64] And pursuant to their inherent authority, courts have discretion to dismiss the action with or without prejudice.[65] Additionally, § 6-1112(e) of the pleading rules authorizes a trial court to "strike the pleading or make such order as it deems just" if an order to make more definite is not obeyed within the time fixed by the court. Dismissal with prejudice is

---

[63] See *Bert Cattle Co. v. Warren*, 238 Neb. 638, 471 N.W.2d 764 (1991).

[64] *Id.* at 641-42, 471 N.W.2d at 767 (internal quotation marks omitted) (explaining "[i]t has almost universally been held or recognized that courts have the inherent power to dismiss an action for disobedience of a court order. . . . Without this right, a court could not control its dockets; business before it would become congested; its functions would be impaired; and speedy justice to litigants would largely be denied").

[65] See, *Scudder v. Haug*, 197 Neb. 638, 250 N.W.2d 611 (1977) (finding no error in dismissing cross-claim with prejudice where defendant was given repeated opportunities to comply with court's order to bring pleading into proper form, yet failed to do so); *Ferson v. Armour & Co.*, 109 Neb. 648, 651, 192 N.W. 125, 127 (1923) (finding no error in dismissing action with prejudice after four pleadings were stricken for failure to comply with pleading rules, though such dismissal "should be sparingly exercised").

- 627 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

generally considered an available sanction under such a provision and is reviewed for an abuse of discretion.[66]

Moreover, the inherent authority of a trial court to dismiss an action with prejudice for failure to prosecute is also well established:

> The authority of a . . . trial court to dismiss a plaintiff's action with prejudice because of [a] failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e. g., 3 Blackstone, Commentaries (1768), 295-296, and dismissals for want of prosecution of bills in equity . . . .[67]

Our record shows that Millard Gutter's failure to comply with the order to make more definite was intentional, not inadvertent. Then, when the case showed no activity for a period of almost 17 months and the court sua sponte issued an order to show cause why the case should not be dismissed for failure to prosecute, Millard Gutter offered no explanation, and instead, it advised the court for the first time that it was going to stand on its original complaint despite the court's prior orders. After the show cause hearing, the district court granted Shelter's motion to dismiss the entire action with prejudice, finding that Millard Gutter's delay "entirely stalled the case for nearly [a] year and a half at the initial pleading stage" and that Millard Gutter had no intention of filing an amended complaint to remedy the deficiencies the court had identified in the original complaint.

---

[66] See, e.g., *Nystrom v. Melcher*, 262 Mont. 151, 864 P.2d 754 (1993); *Clay v. City of Margate*, 546 So. 2d 434 (Fla. App. 1989); *Medved v. Baird*, 58 Wis. 2d 563, 207 N.W.2d 70 (1973).

[67] *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629-30, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) (emphasis omitted).

- 628 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
MILLARD GUTTER CO. v. SHELTER MUT. INS. CO.
Cite as 312 Neb. 606

Although dismissal with prejudice pursuant to a court's inherent authority is a severe sanction which should be exercised sparingly,[68] we cannot say on this record that it was an abuse of discretion. The record in this case supports the trial court's determination that Millard Gutter deliberately disobeyed the order to make more definite, stalled progression of the case by waiting almost 17 months to advise the court of its decision to stand on the original complaint, and failed to show good cause for the resulting failure to prosecute. We find no merit to any of Millard Gutter's arguments that it was an abuse of discretion to dismiss the case with prejudice.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.

---

[68] See *Ferson, supra* note 65.